4ws445
148  499

# Knight *against* Pugh.

The endorsee in a suit by him against the maker of a promissory note, cannot be called on to prove consideration until the defendant has shown it was obtained or put into circulation by fraud or undue means.

ERROR to the Common Pleas of *Bucks* county.

This was an action of *assumpsit* brought by John and Joseph Pugh, executors of Evan Pugh, against Giles Knight, on the following note:

"*Philadelphia, July 4th,* 1839.
$1000.

Twelve months after date, I promise to pay to the order of T. H. Jackson, with interest, at the United States Branch Bank, at New Brighton, one thousand dollars, without defalcation, for value received.

GILES KNIGHT.

(Endorsed), "Pay to EVAN PUGH."  T. H. JACKSON.

The defendant pleaded payment, with leave to give the special matters in evidence, and gave notice that he would offer evidence

IV. — 2 N

that the note was drawn by him in favour of Jackson, in consideration of certain land which Jackson covenanted to convey to him by deed, with general warranty, by an agreement between them of the 26th of October 1839. That since this agreement a judgment had been obtained against Jackson, which was still due and unpaid, and was a lien on said land. That no conveyance of the land had been made to him by Jackson, whom the encumbrances on the land prevented from making good title; that no consideration passed to him from Jackson for the note, and that its transfer to the plaintiff was a fraud on defendant.

The notice also required the plaintiff to prove on the trial his title to the note, and the consideration given by him to the previous holder.

After the plaintiff had given in evidence the above note, the defendant gave in evidence an article of agreement dated 26th of October 1839, between Jackson and himself, by which Jackson agreed to convey to him a certain tract of land, by deed, with general warranty, for the consideration of $3000, to be paid in notes of $1000 each, at 6, 9, and 12 months from 4th of July 1839, and for the further consideration that defendant would remit him the sum of $1500, &c.

The defendant also showed a judgment afterwards entered against Jackson in the Common Pleas of Beaver county for $1860, and then gave in evidence, for the purpose of showing that he had remitted the $1500 according to the agreement, two drafts, one for $200, the other for $800, endorsed by him to Jackson, and his check in favour of Jackson for $500.

The plaintiffs then produced a deed which they offered to give the defendant on his paying the amount of the note. The deed was dated November 20th 1841, and purported to be from the executors of David Townsend to Jackson and the defendant, for the land mentioned in the agreement, but contained no covenant of general warranty.

The court charged the jury that the plaintiff was not bound to show how he came by the note, until there was some evidence that he gave no value for it, or came improperly by the note, or that it was improperly obtained from the maker. That the failure of consideration must be in the original concoction, to put the endorsee to proof how he came by the note; and that their verdict should be for the plaintiff.

Errors assigned:

1. The court erred in charging the jury, "As there is no evidence that the note was endorsed after due, that Pugh did not pay value, or any circumstances shown that Pugh improperly came by it, or had any knowledge of the circumstances between the maker and payee, between Knight the maker, and Jackson the endorsee, the plaintiff is not bound to give evidence how he came by this note, until some circumstance is shown that he came improperly by it, or that it was improperly obtained from the maker."

[Knight v. Pugh.]

2. In charging the jury; " that the failure of consideration must be in the original concoction to put the endorsee to the proof how he came by the note, which is endorsed before due."

3. In charging the jury, " that under the evidence the plaintiffs were entitled to their verdict."

*Ross* and *J. Fox*, for plaintiff in error. The only question is, whether Pugh (the endorsee) stands in the place of Jackson, the payee, so far as to let in our defence of a failure of consideration. We say he does, until he prove himself a *bonâ fide* holder for a valuable consideration. The rule is, if the defendant shows the note was lost, obtained, or put in circulation by undue means, or that he received no value for it, he may compel the plaintiff to show that *he* gave a valuable consideration. 3 *Watts* 20; 5 *Whart.* 338; 5 *Binn.* 469; *Byles on Bills* 61; 3 *B. & Adol.* 291.

*Dubois, contra,* cited *Chitt. Jun.* 100; *Chitt. on Bills* 638; 8 *Wend.* 600.

The opinion of the Court was delivered by

SERGEANT, J.—It seems at one time to have been the rule, though I am not aware of any decision to the full extent, that in a suit by an endorsee of a note against the maker, the defendant is not in general permitted to put the plaintiff on proof of the consideration which the plaintiff gave for the note, unless the defendant can make out a *primâ facie* case against him by showing that the bill was obtained from the defendant or from some intermediate party by undue means, as by fraud, felony or force, or that it was lost, or that he (the defendant) received no consideration. *Byles on Bills* 61, citing *Duncan v. Scott,* (1 *Camp.* 100); *Grant v. Vaughan,* (3 *Burr.* 1516); *King v. Milson,* (2 *Camp.* 54); *Patterson v. Hardacre,* (4 *Taunt.* 144); *Thomas v. Newton,* (2 *C. & P.* 606); *De la Chaumette v. Bank of England,* (9 *B. & C.* 208); *Heath v. Sansom,* (2 *B. & Ad.* 291); *Bassett v. Dodgin,* (10 *Bing.* 40). But, so far as regards the last of these positions, viz: the want of consideration, the latest authorities go to exclude it from the class of cases in which the defendant may call on the plaintiff to show the consideration. In *Whitaker v. Edmunds,* (1 *Mood. & Rob.* 366), cited in *Chitt. on Bills,* 649, 10*th Amer. ed.,* the law is thus stated by Patteson, J.: " Since the decision of *Heath v. Sansom,* (2 *B. & Ad.* 291), the consideration of the judges has been a good deal called to the subject, and the prevalent opinion amongst them is, that the courts have of late gone too far in restricting the negotiability of bills and notes. If, indeed, the defendant can show that there has been something of *fraud* in the previous steps of the transfer of the instrument that throws on the plaintiff the necessity of showing under what circumstances he became possessed of it. So far I accede to the case of *Heath v. Sansom;* for there

[Knight v. Pugh.]

were in that case circumstances raising a *suspicion of fraud:* but, if I added on that occasion, that even *independently* of these circumstances of suspicion, the holder would have been bound to show the consideration which he gave for the bill, merely because there was an absence of consideration as between the previous parties to the bill, I am now decidedly of opinion that such doctrine was incorrect." See also *Low* v. *Chifney,* (1 *Scott* 95, 97), S. C. 1 *Bing. N. Cas.* 267, (27 *E. C. L.* 383); *Heydon* v. *Thompson,* (1 *Adol. & E.* 210), S. C. 3 *Nev. & Man.* 319, 324; *Chitt. on Bills* 649, (10*th Amer.* ed.)

And this rule, we think, is the most consistent with justice and policy. For, in cases other than those of negotiable notes obtained or put in circulation by fraud or undue means, the maker, by its negotiable character, agrees that the payee shall put it in circulation. He has no right, therefore, to complain of his own act; and a holder, placing confidence in such paper, ought not to be compelled to prove consideration. In many cases it would be exceedingly difficult to do so, and to require it would throw a serious impediment in the way of the circulation of negotiable paper. It is otherwise where there is fraud, because there the maker gives no such authority. He is in the light of an unfortunate, rather than an imprudent man, and protection will be given to him so far as to require of the holder proof of a valuable consideration. The policy of the law is to encourage the circulation of negotiable paper, and only interferes to require extraordinary proof from the plaintiff in order to protect one who has been imposed upon in some way or other.

Here the note was negotiable. It was to the order of Jackson, without defalcation. Knight gave it on a contract deliberately made, and Jackson was authorized to pass it by endorsement. There is no suspicion cast on the means by which Jackson got it. It was all fair, and according to contract. The endorsement was according to the tenor of the note, and to require a holder in such case to prove the consideration, would, we think, be putting a clog on the circulation of negotiable securities, which would tend to impair their use and employment.

In *Holme* v. *Karsper,* (5 *Binn.* 469), the evidence offered by the defendant was to prove that the note endorsed by him had been put in circulation by the maker by fraud and falsehood. In *Beltzhoover* v. *Blackstock,* (3 *Watts* 27), the former English doctrine, as laid down in *Heath* v. *Sansom,* is commented on, but not adopted, as the case turned on the insufficiency of the notice. The rule is there declared to be, as now pronounced in England, in *Whitaker* v. *Edmunds,* that "when negotiable paper has been stolen or lost, or obtained by duress, or procured or put in circulation by fraud, proof of these circumstances may be given against the plaintiff; and, on such proof being given, it is incumbent on the plaintiff to show himself to be a holder *bonâ fide* and for a valuable consider-

[Knight v. Pugh.]

ation, otherwise he is considered as standing in no better situation than the former holder, in whose hands the instrument received the taint." The charge of the court below, therefore, in favour of the plaintiff, was correct, and the rule applies whether there is an original want of consideration or subsequent failure.

Judgment affirmed.