## MINELL & Co. vs. REED et al.

1. The holder of endorsed mercantile paper before maturity, is presumed in law to have acquired it *bona fide* and for valuable consideration ; and the party who seeks to defend against it, by reason of some payment, set-off, or equity against the payee or some intermediate holder, is required to show that the holder did not give value for it, or to raise a presumption of that fact sufficient to require an explanation from the holder of the manner in which he received it.

2. A deed of trust, if properly recorded, is constructive notice of the lien in all contests respecting the property ; but this constructive notice does not run with mercantile paper, secured by the deed, so as to charge a *bona fide* holder before maturity with knowledge of its recitals : if there is nothing on the face of the paper itself which could give the holder such notice, or put him upon inquiry, he cannot be affected by any payments, discounts, sets-off or equities existing between the antecedent parties.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. J. W. LESESNE.

THIS bill was filed by the appellants, on behalf of themselves and the other creditors of Oliver Reed, deceased, against his heirs-at-law and administrator, to set aside certain alleged fraudulent conveyances made by their debtor in his lifetime. The complainants' debt, as evidenced by the exhibit to their bill, was a promissory note for $955, executed by said Oliver Reed and one J. S. Carter, due the first day of January, 1838, negotiable and payable at the Branch Bank at Mobile, to the order of John H. Thorington, by whom it was endorsed in blank ; but the bill does not anywhere allege the time at which the complainants became the holders of said note.

The defendants set up several distinct defences to the bill, alleging, among other things, that the note which the complainants held against said Oliver Reed, with others of even tenor and date, was given for the purchase money of a tract of land sold by said Thorington to said Reed and Carter ; that said vendees, at the same time, executed to said Thorington a deed of trust, or mortgage, containing a power of sale, to secure the payment of said notes ; that under said

power of sale, said Thorington sold said land at public auction, for a sum exceeding the aggregate amount of the notes then due and unpaid ; and respondents insist that this operated a payment and extinguishment of said notes.   The defendants admitted, that the note on which complainants founded their bill was, after its maturity, in the hands of said complainants, or their attorney ; " but at what particular time—whether before or after its maturity—said note came to  the hands of complainants, defendants neither know, nor have any information, and therefore can express no belief on that point."

A letter from Henry B. Holcombe, assistant commissioner of the Branch Bank at Mobile, to one of the attorneys in this case, which was, by consent of the parties, " considered and  treated as his deposition, subject to objection on the ground of the irrelevancy of the testimony," gives the following "history of the note" held by complainants, " as shown by the records of said Bank :"   "It was received from the Mechanics' Bank, New York, for collection, and entered on the books on the 29th December, 1837 ; protested for non-payment on the 4th January, 1838, and enclosed in a letter to John Leonard, Esq., cashier, by D. H. Burke, clerk of the Bank, on the 5th January, 1838.   John W. Townsend was the notary public of the Bank at the date of the maturity of the note ; but I am without the means of declaring from the record that he protested it : it may have been protested by some other notary, though it is highly probable the regular notary of the Bank did it.   Mr. Townsend is dead.  I hope the information furnished may be sufficient, as it is all the books appear to contain in reference to the note."

The chancellor held, that the sale under the deed of trust by Thorington constituted a full and  complete payment of the note ; and he therefore dismissed the bill, with costs.

The decree of the chancellor is now assigned for error.

MARTIN & BALDWIN, for the appellants.

WILLIAMS & COCKE, and BELSER & RICE, contra.

CHILTON, C. J.—The decree of the chancellor in this case cannot be supported.   It is shown that, when Thorington sold  the lands embraced in the mortgage, and indeed before

this note fell due, he had parted with this paper, and that it
had come to the possession of the appellants.   The letter of
H. B. Holcombe, which is admitted as evidence, shows that
the paper, which is mercantile, had been endorsed by Thor-
ington to Minell & Co., and had been deposited in the Bank
at which it was payable by their endorsee, the Mechanics'
Bank of New York, on the 29th December, 1837, two days
before its maturity ; and that after it was protested, it was
returned, on the 5th January, 1838, to said Mechanics' Bank.
Now, it is well settled, that where a party shows he is the
holder of endorsed mercantile paper before it falls due, the
law presumes he holds it *bona fide* and for a valuable consid-
eration, and requires the party who seeks to defend against
it, by reason of some equity, set-off, or payment, existing
against, or made to the payee, or some intermediate holder,
to show that the holder did not give value for it, or to raise
a presumption of that fact, requiring an explanation of the
manner in which he acquired it.

In the case of Swift v. Tyson, 16 Peters 1, this doctrine is
distinctly asserted, and is classed among the fundamentals of
the law, and it is affirmed by this court in Pond v. Lockwood,
8 Ala. 674.   As there is not a particle of evidence in this
record that Minell & Co. did not give value for this note, and
as the law implies they did give value in the absence of
rebutting testimony, it follows that, in legal contemplation,
they were the *bona fide* holders of this demand, (having
acquired it before it fell due,) when it is alleged that payment
was made to Thorington, and that such payment cannot be
set up against them.

The position that the deed gave Thorington power to pay
himself by a sale, and that the appellants held the note subject
to this power, cannot be supported.   The deed, properly
recorded, was constructive notice *as to the lien* upon the
property in all contests as to *it;* but that it should run with
mercantile paper, and constructively charge all persons with
a knowledge of its recitals, so as to affect the rights of *bona
fide* holders of such paper, is a proposition to which we cannot
subscribe.   In the mercantile world, parties negotiate upon
the faith of rights which result from the face of the paper
itself and the genuineness of the signatures,   If they receive

it in due course of trade, before it falls due, and are thus *bona fide holders* for value, and the face of the paper shows nothing which could give them notice, or put them upon inquiry, they are exempt from payments, discounts, sets-off, or equities, existing between the antecedent parties.

As the court is not full, (Justice Goldthwaite not sitting in this cause,) and Justice Ligon is on the eve of quitting the bench, I have not time allowed me to give the other questions presented by the argument of counsel the consideration they deserve ; and as they were not decided by the chancellor, and may possibly be made to assume a different shape in the court below upon another trial, we have deemed it proper to confine our opinion to the question of payment, as to which we entertain no doubt.

Let the decree be reversed, at the cost of the appellees.