## Gray's Administrator *versus* The Bank of Kentucky.

The presumption is that the endorsee of negotiable paper received it *bona fide*, in due course of business, and for a valuable consideration.

To put him to the proof of his title and the consideration paid for it, the defendant must make out a *prima facie* case, that it was obtained by undue means, as by fraud, felony, or force, or that it was lost and afterwards put in circulation.

But an affidavit of defence, alleging that the bills were accepted for the accommodation of the drawers, and that the proceeds were to be applied to the taking up of prior acceptances, and that the drawer failed to so apply the proceeds, such misapplication, though a fraud, was not such an one as imparted a taint to the paper, and was insufficient to prevent a judgment for want of an affidavit disclosing any defence to the action.

Where the fraud consists in the misapplication of the proceeds received for the paper, it will not affect it in the hands of the holder, as he is not in any manner bound to look to their application, nor responsible for a misappropriation of them.

ERROR to the District Court of *Allegheny county.*

This was a suit brought by "The President, Directors, and Company of the Bank of Kentucky" against James Gray, on the following three bills of exchange, amounting in all to $8000:—

"Pittsburgh, October 29, 1855.

"Three months after date, pay to the order of ourselves, three thousand dollars, value received, which place to the account of

"WM. A. JONES & CO.

"To James Gray, of Fourth street, Pittsburgh, Pa."

*Endorsed—*

"WM. A. JONES & CO.
"J. H. JONES & CO."

### Acceptance.

"Accepted and payable at Merchants' and Manufacturers' Bank of Pittsburgh, Pa.

"JAMES GRAY, Fourth street."

[Gray's Administrator *v.* The Bank of Kentucky.]

"$3000.                        Pittsburgh, October 29, 1855.

"Twelve months after date, pay to the order of ourselves, three thousand dollars, value received, which place to the account of

"Wm. A. Jones & Co.

"To James Gray, Fourth street, Pittsburgh, Pa."

*Endorsed*—

"Wm. A. Jones & Co.

"J. H. Jones &·Co."

### Acceptance.

"Accepted.   Payable at Merchants' and Manufacturers' Bank of Pittsburgh, Pa.

"James Gray, Fourth street."

"$2000.                        Pittsburgh, November 20, 1855.

"Nine months after date, pay to the order of ourselves, two thousand dollars, valued received, which place to the account of

"Wm. A. Jones & Co.

"To James Gray, Fourth street, Pittsburgh, Pa."

### Acceptance.

"Accepted.  Payable at the Merchants' and Manufacturers' Bank of Pittsburgh, Pa.

"James Gray, Fourth street."

The plaintiffs' affidavit of claim was made by their attorney, setting forth that the defendant is justly indebted to the plaintiffs on his acceptance of three bills of exchange in the sum of $8000, together with interest from the maturity of said bills and costs of protest, all of which is due and unpaid.   Gray made an affidavit of defence, setting forth "that sometime in the year 1853 Jones & Co., of Pittsburgh, applied to him to become an accommodation endorser and acceptor of negotiable paper, for the benefit of said firm, to be discounted for them at the Merchants' and Mechanics' Bank of Pittsburgh, to an amount not exceeding $25,000; at their request he did, at sundry times, between that time and the 1st of July, 1855, endorse and accept their negotiable bills and notes for their accommodation, to an amount unknown to him, but which he was informed and believed did not exceed that sum; and that the new notes and bills, from time to time presented for his endorsement or acceptance, were for the purpose and would be applied to the meeting and taking up prior acceptances and endorsements.   That the said Jones & Co., fraudulently and in collusion with some person or persons unknown to defendant, did not apply the same to the said purpose.   That this defendant had no interest in the said partnership of Jones & Co., nor in the proceeds of said negotiable paper, but only endorsed and accepted

[Gray's Administrator v. The Bank of Kentucky.]

the same for their accommodation.   To which affidavit of defence the plaintiffs filed the following exceptions:—

1. The affidavit is not sufficiently direct and positive.

2. It is too general, especially in not identifying the paper to which defendant's objections apply.

3. The allegations, assuming them all to be true, do not impeach the title of the holders of the bills in suit, nor cast upon them the burden of proving that they took them in the usual course of business for value received.

4. The affidavit is bad, because of duplicity, uncertainty, and inconsistency, and the admission in the latter part, that defendant does not know under what circumstances the paper was put in circulation, nullifies the preceding insinuation that it might have been or was done collusively.

The court, on hearing, sustained the exceptions, and entered judgment for the plaintiffs, for want of a sufficient affidavit of defence, for $8178.56, December 29, 1856.

The plaintiff thereupon sued out this writ, and assigned for error, that the court below erred in entering judgment for want of a sufficient affidavit of defence.

*C. Shaler & Co.* and *Robb & McConnel*, for plaintiff in error, cited Hutchinson *v.* Boggs & Kirk, 4 *Casey* 294.

*Robt. McKnight* and *Geo. P. Hamilton*, for defendants in error, cited Brown *v.* Street, 6 *W. & S.* 221; Knight *v.* Pugh, 4 *W. & S.* 445.

The opinion of the court was delivered by

WOODWARD, J.—That the paper in suit was carelessly made by Gray, and the proceeds of it unfairly used by Jones & Co., is apparent from the affidavit of defence, the sufficiency of which is the only question on the record.   Still it was negotiable paper, and the presumption of law is that the endorsee received it *bona fide*, in due course, and for a valuable consideration.   To put him to proof of his title the defendant must make out a *prima facie* case, that the bill was obtained by undue means, as by fraud, felony, or force, or that it was lost: 4 *W. & S.* 445; 6 *W. & S.* 221; 6 *Barr* 168; 7 *Barr* 476.   Mere want or failure of consideration is not enough, as was satisfactorily shown by Judge SERGEANT in the first named of the above cases.

But it is said the affidavit discloses a case of fraud, similar to that which in Hutchinson *v.* Boggs & Kirk, 4 *Casey* 294, was held sufficient to shift the burthen of proof on to the shoulders of the plaintiff.   We do not think so.   That was a case of cheating with false pretences, which is a fraud that the law denounces as a crime, and

[Gray's Administrator *v.* The Bank of Kentucky.]

for which the guilty party may be punished with the penitentiary, and the paper in suit there was obtained in the perpetration of that crime. It was as if it had been stolen. But here the acceptances sued on were voluntarily made in pursuance of a precedent contract, and for the purpose of giving negotiability to the bills. The acceptor expected them to pass by the endorsement of Jones & Co., and held himself out to the world as responsible for them into whosesoever hands they might come. The affidavit does indeed allege that, according to the contract between the parties, the proceeds of the acceptances were to be applied to the taking up of prior notes and acceptances of Gray, and that Jones & Co. were guilty of a breach of that contract, for they did not so apply the proceeds. The fraud consisted in misapplying the proceeds of the paper, but that in the very nature of the case imparted no taint to the paper itself. The purpose for which the bills were made and put into circulation, was to furnish Jones & Co. with funds to be applied according to their contract with Gray. That was an honest and fair purpose. How could the purchaser of the bills be expected to have any knowledge of the private agreement between the original parties? And if he had, how could it be expected that he would see to the application of the funds he paid for the bills?

It was for Gray himself rather than for the purchaser to look to this, and if he was content to confide in Jones & Co. he has no reason or right to charge the consequences of his over-confidence against the endorsee. To permit an acceptor to set up such a breach of confidence against an endorsee of negotiable paper—a breach or fraud if you please so to call it, occurring after the rights of the endorsee have fully vested—would be against the plainest principles of equity as well as subversive of the commercial law.

To require the holder in such a case to prove the consideration, would, we think, "be putting a clog on the circulation of negotiable securities, which would tend to impair their use and employment."

We are therefore of opinion that there was nothing in the affidavit of defence which tended to impeach the plaintiff's title, or to rebut the presumption which the law makes in his favour, and therefore that the judgment was well entered.

Judgment affirmed.