## CLARK *v.* PEASE.

The fact that a note was originally obtained by duress, will not be a good defence to the note in the hands of a *bonâ fide* holder for a valuable consideration paid before its maturity.

But where fraud, illegality, or duress, in the making or original circulation of the bill or note, is shown, that will cast upon the plaintiff the burden of proving that he is a *bonâ fide* holder for a valuable consideration.

THIS is an action of assumpsit counting upon the promissory note of the three defendants, dated July 26, 1858, for $112.50, payable to one Theodore P. Clark, or order, on the first day of the following November, and by the payee indorsed and delivered, on the day of its date, to the plaintiff. There was also a count for money had and received, to the amount of $300. Plea, the general issue.

The defendants offered to prove that on the day before the giving of the note, all of the makers except Charles Pease were arrested at Ellsworth, in Grafton county, by Calvin Clark, a deputy sheriff, by the procurement and with the aid of the payee, and held by them in custody

until the next day, when they were carried by them to Plymouth, and there held in custody until, to effect their liberation, this note was given, the said Charles Pease signing as the surety of the others; that the arrest was made without any warrant or other lawful authority; but it was represented by the sheriff that they were arrested for the criminal offence of malicious mischief, and that he had the right to arrest them without a warrant; that this note, with two others, amounting in all to $250, was given to said Theodore P. Clark to obtain the release from duress of the three principals in the note, and upon the promise by the payee that they should then be set at liberty, and he would prosecute them no further; and upon the execution of the note they were set at liberty accordingly.

The plaintiff excepted to this evidence, as no defence against the indorsee, without proof that he was not the *bonâ fide* holder of the note. But the court ruled that if the note was obtained by duress, it was void in the hands of an innocent indorsee, and thereupon the plaintiff, admitting for the purposes of this trial that the defendants' witnesses would testify to the facts stated, a verdict for the defendants was taken by consent, subject to the opinion of the court; and the questions thus raised were reserved, and assigned to the determination of the whole court.

*Sawyer & Stevens*, and *J. Clark*, for the plaintiff, cited Story on Prom. Notes, secs. 191, 192; *Doe* v. *Burnham*, 31 N. H. 426; Ch. on Bills 79; *Shaw* v. *Spooner*, 9 N. H. 197; *Plumer* v. *Smith*, 5 N. H. 553; *Rockwell* v. *Charles*, 2 Hill 499; Saund. Pl. & Ev. 587, 594; *McCrillis* v. *Bartlett*, 8 N. H. 569; *Clark* v. *Ricker*, 14 N. H. 44; Bayley on Bills 368.

*Morrison & Stanley*, for the defendants.

It is a familiar principle of elementary law, founded in reason and justice, that the essence of a contract is the

assent or agreement of the mind of both parties, and that there is no contract unless the parties thereto assent, and "when such assent is impossible, from the want, immaturity, or incapacity of mind, there can be no perfect contract." 1 Pars. on Con. 399; Ch. on Con. 9. Upon this principle certain classes of persons are held to be incompetent to make contracts. Such are infants, insane persons, person *non compos mentis*, married women, slaves, and persons under duress; and all for the same reason, that the party, at the time of executing the contract, in the language of Lord *Ellenborough*, in *Pitt* v. *Smith*, 3 Camp. 33, "had not an agreeing mind." 1 Pars. on Con. 242, 286, 310, 319, 337. It is not denied by the plaintiff in this case that duress is a good defence between the original parties to a note, but it is contended that it is not a defence against an innocent indorsee. We are not aware that this question has been distinctly raised and fully considered in any modern case, but we think that, upon analogy and sound principles, the ruling of the court in this case is fully sustained, and that duress is a good defence against an innocent indorsee.

An examination of reported cases, and the principles and reasons on which the decisions are based, will show that promissory notes, with reference to the rights of holders, may be divided into three classes: First, notes which are declared void by statute; second, notes which are voidable in the ordinary sense of that term,—that is, which are valid until disaffirmed by the maker; third, notes which are voidable in the sense in which that term is frequently used when applied to executory contracts,—that is, which are invalid until ratified or affirmed by the maker. The first class includes those cases where the statute, either expressly or by necessary implication, makes a note void in the hands of every holder,—as the statutes against gaming. The second class includes the cases where the note is procured by misrepresentation, cases of failure of con-

sideration, and those cases not embraced in the first class, where the consideration is illegal, and all other cases, excepting the first class, where the parties are competent to contract, and, are under no personal disability at the time of making the note. The third class includes all cases where the party is incompetent to contract at the time of making the note,—as notes of infants, persons *non compos mentis*, married women, slaves, and persons under duress. The first class are void absolutely in the hands of every holder. The second class are voidable between the original parties, but valid in the hands of an innocent indorsee. The third class are invalid in the hands of all holders, until affirmed or ratified, and are void in the hands of an innocent indorsee before such ratification.

The rule applicable to the third class of cases is well founded upon principles of justice and reason. The maker of the note, at the time of its execution, not having that free and voluntary power and capacity of assent which is of the essence of every contract, the note is in law a mere nullity, and possesses no legal or binding force; and no act of any person except the maker can give it validity as a legal contract, and the maker can only ratify it after his incapacity to make a contract is removed, and then the ratification, which is in fact the making of the note, relates back to the time of its execution, and makes it a valid contract, and he can no longer avoid it in the hands of any holder, either the payee or indorsee. *Wright* v. *Steele*, 2 N. H. 51; *Lang* v. *Whidden*, 2 N. H. 435; *Burke* v. *Allen*, 29 N. H. 106; *Davis* v. *Lane*, 10 N. H. 156; *Mitchell* v. *Kingman*, 5 Pick. 431; *Seaver* v. *Phelps*, 11 Pick. 304; *Edgerly* v. *Shaw*, 25 N. H. 514; *Reed* v. *Batchelder*, 1 Met. 559; *Lawson* v. *Lovejoy*, 8 Gr. 405; *Peaslee* v. *Robbins*, 3 Met. 164; *Sentance* v. *Pool*, 3 Cor. P. 1; Smith on Con. 231, note a, and cases cited; Story Prom. Notes, secs. 85, 87, 101.

If A sign B's name to a note without his assent, it is a

forgery, and the note is void in the hands of any holder. What difference can it make whether A sign B's name without his assent, or compel B to sign it himself against his will? It is no more the note of B in the one case than in the other; and if the note in one case is void, why is it not equally void in the other, and for the same reasons? But it is said that "an innocent indorsee takes the note free from all the defences between prior parties," and is "placed upon impregnable grounds;" and the case of *Doe* v. *Burnham,* 31 N. H. 426, is cited to maintain that position. It is true such is the language of that decision, and similar expressions may be found in other cases; but it is equally true that they are of no weight whatever. The language used in those cases is altogether too broad, and if they are of any authority, they show not only that a note obtained by duress is void in the hands of an innocent indorsee, but that the note of an infant, a married woman, an insane person, or a forged note, is also valid in the hands of such holder; and, in short, that no defence can be set up by the maker in a suit by an innocent indorsee. But such is not the law.

SARGENT, J. That the case presented is clearly one of duress, there can be no question. The abuse of any process, either civil or criminal, to compel a party, by imprisonment, to do any act against his will except to pay the debt for which he is arrested, is entirely illegal, and the act may be avoided on the ground of duress. *Richardson* v. *Duncan,* 3 N. H. 508; *Severance* v. *Kimball,* 8 N. H. 386; *Shaw* v. *Spooner,* 9 N. H. 197; *Burnham* v. *Spooner,* 10 N. H. 523; *Breck* v. *Blanchard,* 22 N. H. 303. Here the arrest was without any warrant or lawful authority. Such duress is a perfect defence, upon all the authorities, to an action between the original parties.

The note in this case was not only void as between the original parties, on the ground of duress, but was given to

compromise a charge of crime, and was wholly illegal upon that ground. *Plumer* v. *Smith*, 5 N. H. 553. But the principal question raised here by the ruling of the court is, whether such a note is absolutely void in the hands of any holder; and if not, then another question arises upon the exception which was taken by the plaintiff, which is this: after an indorsee has made out a *primâ facie* case by proving the indorsement, &c., and the defendant has shown that the note was obtained from him by duress, upon whom rests the burden of proof? Must the defendant prove that the plaintiff was not the *bonâ fide* holder, and that he did not pay a valid consideration for it, as the plaintiff claimed? or, the duress being proved, does that throw the burden of proof upon the plaintiff, to prove how he came by the note, and the consideration he paid, &c., as the defendant claims? We will examine these questions in the order in which we have stated them.

I. Is this note absolutely void in the hands of any holder, however innocent, who has paid a valid consideration for it before it was due.

We find that the law holds certain persons to be incompetent parties to make contracts, on account of want of capacity. It has, therefore, wisely taken care of the interests of those who either have not judgment to contract, as in the case of infants, or who, having judgment to contract, cannot in law have any funds or property to enable them to perform the contract, as in the case of a *feme covert;* and therefore it has in general rendered the contracts of infants voidable, and those of married women absolutely void. Ch. on Bills 18. By our law an infant has not capacity to bind himself absolutely by a promissory note, as maker or indorser. Story Prom. Notes, sec. 78. So a married woman is incapable, in any case, of becoming a party to a note or bill so as to charge herself with any obligation whatever ordinarily arising therefrom. So contracts made with an alien enemy are absolutely void, upon

the ground of disability to contract. This principle has its origin and confirmation in the law of nations. Persons insane, or imbecile in mind, have not the mental capacity to contract. This disability flows from the most obvious principles of natural justice, because persons in that condition—lunatics, idiots, and persons *non compos mentis*— being bereft of their reason, are, by the rules not only of municipal law but of universal justice, held to be utterly incapable of making contracts, and generally their contracts are absolutely void. Story Prom. Notes, secs. 85, 94, 100, 101 ; Edwards Bills & Notes, ch. 2. There are some other parties that are held to be incompetent to contract, but these are the principal; and there are also some exceptions to some or all of the general rules above stated, which are not now important to be noticed. These doctrines are all familiar as elementary principles.

Contracts, therefore, purporting to be entered into by either of the above parties, are either void, or voidable, as the case may be, alike as against the other party to the original contract, and also, where the contract is assignable, they are void as to such incompetent parties, or are voidable by them, in the hands of any assignee or indorsee. These rules of law are founded upon the most common principles of natural justice and of public policy.

There are numerous other contracts, which, though made between competent parties on both sides, are nevertheless void as between such original parties. A contract made on Sunday, where the transaction of such business is prohibited, is an illegal contract, and void as between the parties. So a contract based upon an illegal consideration—as usury, gaming, spirituous liquors sold without license contrary to law, the compounding of a felony, &c. —is void as between the parties. So a contract without consideration, *nudum pactum,* and one where the consideration has failed, as between the immediate parties, is void or voidable. So a contract entered into by compulsion

under duress, or obtained by fraud, or circumvention of one in a state of intoxication, is void as between the parties. Other cases might be stated (see Ch. on Bills 82–87), but these are sufficient for our present purpose. Where the contract itself is illegal, or is founded upon an illegal consideration, the parties are usually both violators of the law, and stand *in pari delicto.* In such case any contract for the payment of money or the performance of any service cannot be enforced as between the parties; nor, if money has been paid or property transferred by one party to the other under such contract, where both parties are alike in fault, can it be recovered back, because in such cases, "*Potior est conditio possidentis.*" But in cases of duress, fraud, or circumvention, the fault was all upon one side, and the innocent party, upon whom the duress or the fraud was practised, may not only avoid the contract entered into under these circumstances, but if he pay money, or deliver property, he may recover it back again. Now bills and notes stand upon the same foundation as all other contracts do, in all the above respects, so long as they remain in the hands of the original payee. But bills and notes have another attribute, which other contracts ordinarily do not possess,—that is, negotiability. Where a bill or note has been negotiated, and passed into the hands of a *bonâ fide* holder before it is due, and for a valuable consideration, in such case the holder acquires rights which did not belong to the payee. He stands in a different relation to the promissor. These additional rights and privileges have been conferred upon such holder by law, for good and sufficient reasons, too well known and understood to need to be stated, but which are incident to, and dependent upon the attribute of negotiability, which these instruments possess.

And it may be laid down as the general rule, as the general principle applying to this class of cases, that such a note, thus negotiated and in the hands of such a holder,

is not liable to any defence which the maker had as against the original payee. To this general rule there are some exceptions, among which are—

1. When a statute not only prohibits the making of a contract, but provides that the same shall be void to all intents and purposes; or where the law provides that any contract made or securities given upon any illegal consideration shall be absolutely void, then the note which embodies such contract, or is based upon such consideration, is held void every where and in the hands of every holder. In England, and in most of the United States, there are or have been laws against usury, which not only, by a general prohibition of usury, made that an illegal consideration for a note, but also provided that all bills or notes founded upon such a consideration should be absolutely void. Such, however, is not the law in this State on that subject, and it is believed that we have no statutes with similar provisions. Hence, here usury may be a good defence to a note as against the original party, but not as against an innocent indorsee, for value, &c.

2. When the note is a forgery, it is void every where.

3. When the maker belongs to a class of persons who are ordinarily, and as a general rule, on grounds of public policy, held incompetent to contract at all, such as infants, married women, alien enemies, and insane persons, including spendthrifts and others under guardianship, who have been by some statute declared incompetent to contract.

4. Notes signed by agents without authority.

In none of these cases (except the first, which, as we have seen, does not apply in this State) is a note valid in the hands of any one; and the party who discounts such paper is bound to inquire, at his peril, whether the note offered to him is signed by a party capable and competent in law to bind himself, or by an agent duly authorized to bind his principal. Beside this, he is bound to inquire whether the party from whom he receives it is competent

Clark *v.* Pease.

to make such transfer in his own right, or is authorized to do it for his principal, for whom he assumes to act.

If there is a failure in either of these points of capacity or authority, it will not avail the party that he is a *bonâ fide* holder, for value, without notice. He must look to his indorser if he has one, and if he has not he must suffer loss.

5. Another case might be mentioned, which has been made an exception to the general rule above stated by express provisions of the statute,—as where a note is attached by the trustee process. There, by operation of the statute, the maker of a note may have a perfect defence against an indorsee, for value, without notice, and before due. So notes discharged by operation of insolvent laws might afterward be transferred, by possibility, so as to form another exception, where the indorsee, holding the note *bonâ fide*, &c., might be met with a perfect defence on the part of the maker. But these last cases throw no light upon the question we are considering. These are the principal, perhaps all the exceptions to the general rule above stated, that no defence is available against an innocent indorsee, for value paid before due. But where the contract was illegal, being prohibited by law, or the consideration was illegal, as usury, wagers, compounding a felony, restraint of trade or of marriage, &c., or where there was a want or failure of consideration, and even where the note has been paid,—all these defences, and many more, cannot be made against the note in the hands of such a holder. And the question here raised is, whether, in case of duress, or fraud, where there is *mala fides*, but it is all on one side, and the other party to the note has been induced to sign it by force or by fraud, and is in every respect an innocent party, such defence shall avail him as against such a holder, for value, &c., who seeks to collect it.

And we think such a defence cannot avail the maker against such an indorsee of the note. The authorities

favor this view. *Kent*, in his Commentaries, vol. 2, sec. 39, speaks of contracts generally, and on page 453 says, "If a contract be entered into by means of violence offered to the will, or under the influence of undue constraint, the party may avoid it by plea of duress; and it is requisite to the validity of every agreement that it be the result of a free and *bonâ fide* exercise of the will. Nor will a contract be valid if obtained by misrepresentation or concealment," &c.

He here speaks evidently of the contract as between the original parties to it, or of contracts in general as distinguished from negotiable notes and bills; because he devotes another chapter especially to a consideration of bills and notes, in which he says, in speaking of the right of the holder (vol. 3, pages 79, 80), that a *bonâ fide* holder can recover upon such note, though it came to him from a person who had stolen or robbed it from the true owner, provided he took it innocently in the course of trade, for a valuable consideration, and under circumstances of due caution; and he need not account for his possession of it unless suspicion be raised. This doctrine is founded on the commercial policy of sustaining the credit and circulation of negotiable paper. Suspicion must be cast upon the title of the holder by showing that the instrument had got into circulation by force or fraud, before the *onus* is cast upon the holder of showing the consideration he gave for it.

*Chitty* says (Ch. on Bills 72), "In general there will be a sufficient defence between the original parties when the bill or note was obtained by duress, or by fraud, or by circumvention," &c. But he no where intimates that any of these defences would be good against an innocent indorsee; but, on the contrary, he expressly says (page 79), "The circumstance of a bill or note having been obtained without adequate consideration, or even by duress or fraud, or misapplied by an agent to his own use, affords no de-

Clark *v.* Pease.

fence where the instrument comes into the possession of a *bonâ fide* holder, for value, without notice, and before it is due."

So in Edwards on Bills and Promissory Notes (page 325), it is said, that "between the immediate parties it may be shown, by way of defence, that a bill or note was obtained by duress, or by fraud, or by circumvention," &c.; but he no where intimates that any of those circumstances would constitute an exception to the rule which he states (page 56), that the *bonâ fide* holder of negotiable paper, who has paid value for it before its maturity, or who has relinquished some available security or valuable rights on the credit thereof, is entitled to protection, and may recover thereon notwithstanding some of the previous holders procured the same by fraud.

So in Story on Promissory Notes (section 188), it is said, under the head of want of consideration, that notes obtained under duress are void; but it is also said (section 191) that the want or failure of consideration, or mere fraud between the antecedent parties, will be no defence or bar to the title of a *bonâ fide* holder of the note, for value, &c. Now we are not able to see what distinction there could be in fact, between a note, the signature to which was obtained by fraud, and one where the signature was obtained by duress. Both are equally void as between the original parties; and there can be no better reason in the one case for holding the note void in the hands of a *bonâ fide* holder, than in the other. "It is requisite to the validity of every agreement that it be the result of a free and *bonâ fide* exercise of the will." 2 Kent Com. 453, *ante.* Upon this ground, fraud in obtaining the signature would be fatal to precisely the same extent as would duress; there would be no "free and *bonâ fide* exercise of the will" in the one case more than in the other.

In *Doe* v. *Burnham,* 31 N. H. 431, the rule is laid down very broadly, and without those qualifications and excep-

---

---

tions which we have heretofore seen must necessarily always accompany it. *Eastman*, J., delivering the opinion in that case, says that where a note is indorsed in the usual and ordinary course of commercial business, all the authorities "sustain the broad rule that a *bonâ fide* holder for a valuable consideration, who becomes such before the dishonor of the note, takes it free from all defences between prior parties;" and see cases there cited. He also quotes *Shaw*, C. J., in *Wheeler* v. *Guild*, 20 Pick. 545, as stating the rule in Massachusetts substantially in the same way, and then adds, "We are not aware that in this State there is any exception to the universality of the rule."

Now this rule, in the general and broad terms in which it is here laid down, is at once seen to be incorrect, because in case of notes forged, or signed by an agent having no authority, or by an infant, a married woman, an alien enemy in time of war, or an insane person, exceptions to this rule have been seen to exist necessarily. But if the intention was merely to state a general rule, subject to such limitations and exceptions as general rules are usually subject to, it is undoubtedly correct; and in that view it is broad enough to cover our present case, because in this case the signature to the note is genuine, and no forgery. No question of agency or authority arises, nor does the signer belong to either of the classes whom the law holds incompetent to contract.

Suppose an individual, then, were about to purchase a note payable to bearer, before it was due, and pay a fair equivalent for it, with a view of collecting it of the maker, and where he is to have no indorser to rely upon,—what would be his duty in order to proceed safely? First, he must assure himself of the genuineness of the signature, or, if it purported to be signed by an agent, he must assure himself that the agent was duly authorized to bind his principal in that particular; secondly, he must make such inquiries, which, ordinarily, he may easily do, as to ascer-

tain that the signer is not an infant, a married woman, an alien enemy, an insane person, &c.,—that he does not belong to a class of persons who are always presumed by the law to be incompetent to contract; and thirdly, he might need, for his own safety, to inquire whether the signer of the note had been trusteed, or whether any other special statute could affect his claim to it. When he has satisfied himself upon these points, if he learns of no other defects, and the signer is of sufficient ability to respond, he may purchase; and there is generally very little trouble in ascertaining these facts. They are usually matters of public notoriety, about which there can be little room for mistake.

But, suppose that after being satisfied upon all these points, and having purchased the note, it should prove that it was an illegal contract, or was for an illegal consideration,—who shall suffer? the maker, or the indorsee? This is settled on the best of authority. The original parties stood upon equal ground, both being in fault, and could neither of them enforce the contract; yet neither shall be allowed to take advantage of his own wrong as against an innocent indorsee.

And suppose it should turn out that his note was obtained of the maker by fraud or by duress, a case in which the maker was in no fault,—what rule shall be applied here?—the long established one, that where one of two innocent persons must suffer, the loss should fall upon him who has suffered a negotiable security, with his name attached to it, to get into circulation, and thereby mislead the indorsee. Such rules, and such an application of them, are necessary to give security to negotiable paper.

The defendant's counsel claim that the same rule that would hold the maker of a note, who signed it under duress, to pay it to the innocent holder, for value, would hold infants, and others who are incompetent to contract, to pay their notes when thus held; but this is neither a legal nor a logical sequence. The infant belongs to a class, all of

whom are held by law to be incompetent to bind themselves by their contracts. In the other case, the man belongs to a class amply competent to contract; is under no general disability as the infant is ; is never to be presumed to have signed any note under duress, because that is a condition never to be presumed in case of a free man, who may have signed a thousand notes and never have signed but this one under duress. Is suspicion to be cast upon all notes that are known to be properly signed, and against men under no disability, simply because it is possible that such a note may be obtained by duress or fraud ?

Take also the case of a slave. There the general rule is, that he is incompetent to contract; and if a man were about to purchase a note, and, upon inquiry as to who the signer was, should learn that he was a slave, that would be sufficient notice to him that the note was void, because all contracts made by all slaves usually are so, because, while in that condition they must necessarily be constantly under duress of body, mind, and will. But when it is ascertained that the signer is a free man, then the presumption is that he is never under duress, and there are only rare exceptions to this general rule ; and to say that in such exceptional cases the maker shall be allowed to stand upon such a defence against an innocent holder for value, taking it in the ordinary course of mercantile business before the maturity of the note, would be to overthrow all confidence in negotiable paper, and entirely reverse the policy of the whole system of mercantile law. The exception to the ruling of the court upon this point must be sustained ; but we shall find that the numerous authorities which bear upon the next question to be considered, have also a direct bearing upon this point.

II. Next let us inquire, upon whom is the burden of proof, after duress, or fraud, or illegality of consideration is proved? Must the defendant not only prove that he had a per-

fect defence to the note originally, but also show that the indorsee had notice of the defect, or that he paid no consideration for it, or that he is not in some way the *bonâ fide* holder of the note? Or must the plaintiff, after such defence to the original contract is proved, assume the burden of proving that he is a *bonâ fide* holder, for a valuable consideration, without notice of any defect, and that it came seasonably into his hands?

In *Collins* v. *Martin*, 1 B. & P. 651, *Eyre*, C. J., says, "No want of consideration, or other ground to impeach the apparent value received, was ever admitted in a case between an acceptor or drawer, and a third person holding the bill for value; and the rule is so strict, that it will be presumed that he does hold for value till the contrary appears; the *onus probandi* lies on the defendant." This case is cited approvingly in *Doe* v. *Burnham*, 31 N. H. 432, though the question we are now considering was not there raised. But the case of *Collins* v. *Martin* goes further than this, and holds that where the defendant has first proved that the note or acceptance had been obtained by felony, by fraud, or by duress, that so far tended to throw suspicion upon the indorsement as to call on the plaintiff, the indorsee, to prove that he paid value for it.

This is unquestionably the correct rule, as also stated by *Parker*, J., in *Heath* v. *Sansom*, 2 B. & Ad. 291, although the majority of the court in that case came to a somewhat different conclusion, and held that "in all cases where, from defect of consideration, the original payees cannot recover upon the note or bill, the indorsee, to maintain an action against the maker or acceptor, must prove consideration given by himself, or a prior indorsee." The same doctrine is held in *Brown* v. *Philpot*, 2 M. & Rob. 285.

But these decisions were soon overruled, so far as a mere want or failure of consideration was concerned.

In *Bailey* v. *Bidwell*, 13 M. & W. 73, it was held by the Court of Exchequer, that if, to an action on a bill or note,

the defendant pleads that it was illegal in its inception, and that the plaintiff took it without value, the illegality being proved, the *onus* is cast upon the plaintiff of proving that he gave value. The reason of the rule is there stated by *Parke*, B., who says, "It certainly has been, since the later cases, the universal understanding, that if the note were proved to have been obtained by fraud, or affected by illegality, that afforded a presumption that the person who had been guilty of the illegality would dispose of it, and place it in the hands of another person to sue upon it, and that such proof casts upon the plaintiff the burden of showing that he was a *bonâ fide* indorsee for value." *Alderson*, B., adds, "It appears to me that though the defendant is bound to aver in his plea both the illegality and want of consideration, yet if he proves the illegality, and the plaintiff does not prove the giving of the consideration, the plea is maintained."

And in *Smith* v. *Braine* (in the Queen's Bench, 3 E. L. & E. 379), *Campbell*, C. J., says, "But since the new rules, judges have, with entire approbation, directed juries that where the bill was illegal in its inception, or where the immediate indorser to the plaintiff obtained possession of it by fraud, the want of consideration as between him and the plaintiff may be presumed."

In *Duncan* v. *Scott*, 1 Camp. 100, which was an action by the indorsee against the drawer of a bill, the defendant had given the bill without consideration, and while under duress. Lord *Ellenborough* held that upon these facts being proved by the defendant, the plaintiff must prove that he gave value for it before he could recover, even though it was indorsed to him before it became due.

*Rees* v. *Headfort*, 2 Camp. 574, was an action by an indorsee against the acceptor of a bill. The drawer had received no consideration, but had been tricked out of the bill by a gross fraud. Upon proof of these facts by the defendant, Lord *Ellenborough* held that it was incumbent

on the plaintiff to show some consideration paid for the bill; and not doing so, he was nonsuited.

*Bayley*, in his work on bills (page 372), says, "In many cases the plaintiff is compellable to prove that either he, or some preceding party, took the note *bonâ fide*, or for value, —as in case of a bill or note originally given without consideration, and while the person giving it was under duress, or in case of a bill or note obtained by fraud, or in case of a delivery by a person not entitled to make it, as in the instance of bills or notes that have been stolen or lost."

In *Mills* v. *Barber*, 1 M. & W. 425, Lord *Abinger*, C. B., says, "Where there is no fraud nor any suspicion of fraud, but the simple fact is that the defendant received no consideration for his acceptance, the plaintiff is not called upon to prove that he gave value for the bill; but if the bill be connected with some fraud, and a suspicion of fraud be raised from its being shown that something has been done with it of an illegal nature, or that it has been clandestinely taken away, or has been lost or stolen, the holder will be required to show that he gave value for it." And (page 432) "if, in an action by an indorsee against the acceptor of a bill, the ground of defence be that the bill was obtained illegally from the defendant, and indorsed to the plaintiff without consideration, the defendant will be bound in his plea to aver both the illegality and the want of consideration; and if, at the trial, he proves the illegality, such proof will, according to the rule above stated, throw upon the plaintiff the *onus* of showing that he gave consideration for the bill." The same doctrine is held in *Bingham* v. *Stanley*, 2 A. & E. (N. S.) 117; *Berry* v. *Alderman*, 24 E. L. & E. 318.

In *Dè La Chaumette* v. *Bank of England*, 9 B. & C. 208, where the defendant had proved that the bill was stolen, it was held that it was incumbent on the plaintiff to show that the foreign merchant, who assigned it to him, gave full value for it.

Clark v. Pease.

In *Harvey* v. *Towers*, 4 E. L. & E. 551 (6 Exch. 656), *Pollock*, C. B., says, "This is an action on a bill of exchange, with a plea of fraud, which, according to the ordinary course of pleading, contains an allegation not merely of the fraud in obtaining the bill, but that the plaintiff gave no consideration for it. In point of law, that last allegation was necessary to make the plea a perfect answer to the action; for though a bill of exchange may have been originally concocted in fraud, or obtained by fraud, though it may have been stolen, or a party may have been swindled out of it, this is no defence to an action by the holder, unless he has obtained it without giving value; and he may sue on it notwithstanding such defect in the title of some one else." He also holds that proof of fraud alone, by the defendant, is a sufficient sustaining of this plea to throw upon the plaintiff the burden of proving consideration; and where there is evidence of fraud for a jury, the judge should call on the plaintiff for such proof, with instructions to the jury that if they find the fact of fraud proved, the plaintiff must satisfy them that he gave consideration for the bill.

In accordance with the doctrine of these cases last cited, is Greenleaf on Evidence (section 172), where it is said, "In an action by the indorsee against the original party to the bill, if it is shown on the part of the defendant that the bill was made under duress, or that he was defrauded of it, or if a strong suspicion of fraud be raised, the plaintiff will then be required to show under what circumstances and for what value he became the holder. It is, however, only in such cases that this proof will be demanded of the holder; it will not be required where the defendant shows nothing more than a mere absence or want of consideration on his part." See also *Bramah* v. *Roberts*, 1 Bing. N. C. 469; *Low* v. *Chifney*, 1 Bing. N. C. 267.

So in 2 Phill. Ev. (4 C. & H.) 8, it is said that in some cases the plaintiff, in an action upon a bill of exchange or

promissory note, must prove that he or some preceding party took the bill or note *bonâ fide,* and for value, as where bills or notes have been obtained by fraud, or under duress, or have been stolen or lost. When the plaintiff has established a *primâ facie* case, it then remains for the defendant, if he can, to impeach his title; and until he has first cast some suspicion on the title by showing that the note was lost, or obtained by force or fraud, he cannot cast the burden of proof upon the plaintiff. See also *Heyden* v. *Thompson,* 1 A. & E. 210; 1 Saund. on Pl. & Ev. 304, 305; Ch. on Bills 79; Bayley on Bills 500.

And in Smith's Mercantile Law 320, it is said that the defences of duress, fraud, &c., will not prevail against a *bonâ fide* holder.

The same doctrines very generally prevail in this country, wherever the subject has received judicial consideration. *Munroe* v. *Cooper,* 5 Pick. 412; *Woodhul* v. *Holmes,* 10 Johns. 231; *Vallett* v. *Parker,* 6 Wend. 615; *Small* v. *Smith,* 1 Den. 583; *Worcester Co. Bank* v. *D. & M. Bank,* 10 Cush. 488; *Wyer* v. *D. & M. Bank,* 11 Cush. 52; *Rockwell* v. *Charles,* 2 Hill 499; *Bissell* v. *Morgan,* 11 Cush. 198; *Crosby* v. *Grant,* 36 N. H. 273. So in Smith on Cont., 3d Am. Ed. 277 (\*187), in a note by *Rawle,* it is said that in New-York it has been held that, as soon as the defendant shows there has been usury between the prior parties, he casts on the plaintiff the burden of proving that he is a holder for value,—as is the case in every instance where fraud, duress, or illegality is shown between the prior parties.

These authorities would seem conclusive, that the plaintiff's exception,—that the evidence offered would have been no defence unless it were proved that he was not the *bonâ fide* holder,—must be overruled. When the defendant had proved the duress, he had made a good defence as against the original party; and because of the legal presumption that in such cases the payee, being guilty of such

illegality, would dispose of the note and place it in the hands of some other person to sue upon it (*Bailey* v. *Bidwell, ante*), he had thereby cast a suspicion on the plaintiff's title, which threw the burden upon him of showing affirmatively that he was a *bonâ fide* holder for value. Nor can we see that the fact, that this evidence was offered under the general issue, alters the position of the parties or the state of the case.

These authorities also bear directly upon the first point taken by the defendant that duress is a defence against any holder, however innocent he may be, and however valuable a consideration he may have paid for the note; and if other authorities on this point were needed, they are not wanting. In *Powers* v. *Ball*, 27 Vt. 662, *Redfield*, C. J., says, "Illegality, duress, fraud, and want or failure of consideration, are no defences as against a *bonâ fide* holder for value." See also *St. Albans Bank* v. *Dillon*, 30 Vt. 122; *Ellicott* v. *Martin*, 6 Md. 509; *Minell* v. *Reed*, 26 Ala. 730; *Norris* v. *Langley*, 19 N. H. 423; *Knight* v. *Pugh*, 4 Watts & Serg. 445. The verdict must be set aside, and

*A new trial granted.*