HOLME *against* KARSPER.

IN ERROR.

</div>

*Philadelphia,
Saturday,
April 3.*

BY a bill of exceptions signed by the Judges of the District Court of the city and county of *Philadelphia*, it appeared that this action was brought upon a promissory note drawn by one *Delabourdine*, on the 12th day of *December* 1809, and payable seventy-five days after date without defalcation, to *Holme*, the defendant below, who was sued as indorser.

*If the indorser of a promissory note, proves that it was put into circulation by the drawer fraudulently, he may call upon the holder to shew what consideration he gave for it, and how it came into his hands. And the indorser is entitled to give such proof, in order to require such explanation from the holder.*

Before the trial, the attorney of *Holme* gave notice to the plaintiff, that proof would be required from him, of the consideration he gave for the note, and of the circumstances under which it came to his hands. At the trial, it appeared that the plaintiff possessed the note before it became due, and had it protested for nonpayment. The defendant's counsel, then, to entitle him to use the previous notice, offered to prove that the note was given by the drawer to *Holme*, the payee, for goods sold and delivered; that it was never put into circulation by the payee, his name having been written upon it, merely for the purpose of collection in bank, where it was deposited by him; that in consequence of an arrangement between the drawer and the payee, the note was taken out of bank by the latter, settled for, and sent to the drawer to be cancelled; and that the payee, having neglected to strike his name off the note, sent immediately to have it done, and was told by the drawer, that the note had been destroyed. The Court, however, refused to admit the evidence, or to permit the defendant to call upon the plaintiff agreeably to the notice.

1813.

HOLME
v.
KARPSEN.

*Biddle* and *Dallas* for the plaintiff in error. It is a proposition universally true, that where a promissory note has been feloniously or fraudulently put into circulation, the holder, upon the proof of such fact, is bound to shew that he obtained it *bona fide*, and for a good consideration. The circumstance that the note was not due when the holder received it, is nothing in this point of view. If due, *bona fides* and consideration would not help him; it would have been his duty to inquire. *Tinson* v. *Francis* (a). If not due, then they will help him, if he can shew them; but after the note is impeached, it is for him to shew that his good faith, and the consideration paid, prevent the consequences from extending to him. The clause of defalcation is also unimportant. It prevents a *set off* by the payee against the drawer; or in other words, it applies to notes of hand in this state, the general commercial principle, and makes them negotiable, whereas before they were assignable only. But this does not give immunity to a rogue, a thief, or a finder. It leaves the note as to such a case upon the footing of the general law, by which it is perfectly well settled, that the evidence offered below, was proper. In *Grant* v. *Vaughan* (b), the case of a *lost* note, one of the questions left by Lord *Mansfield* to the jury, was whether the plaintiff came to the possession of the note, fairly and *bona fide*. The general result of the authorities is stated by *Peake*, who says, " where a bill has been " stolen from the real owner, or given on a bad considera- " tion, it will be incumbent on the holder to prove that he " received it *bona fide* for a valuable consideration." *Peake's Ev.* 220; and he is supported by *Kyd* 206, by *Duncan* v. *Scott* (c), and by *Rees* v. *Marquis of Headfort*, (d), in point to the present case.

*Phillips* for the defendant in error. The note having been passed to the plaintiff below, before it became due, it was *prima facie* a sufficient title to demand payment; and it was incumbent on the indorser to impeach it directly, by shewing fraud or want of consideration on the part of the holder. He was not entitled to call upon the holder for proof of the contrary. In one case the doctrine has been carried further. In

(a) 1 *Campb.* 19.
(b) 3 *Burr.* 1523.

(c) 1 *Campb.* 100.
(d) 2 *Campb.* 574.

*Russel* v. *Boon* (*a*); the Supreme Court of *New York* say, that no cases have gone so far, as to admit of the defence that the note was fraudulently obtained and passed, except where the passing was after it became due. " If made pay- " able to order, it is perhaps never necessary for the in- " dorsee to prove that he gave value for it; nor has the maker " been permitted to go into its real consideration, unless it be " such as to render it void by statute, or unless it has become " due before it was transferred." Every indorser is a new maker, and as between him and a subsequent holder, the rule is the same as between drawer and payee.

1813.

HOLME
v.
KARSPER.

TILGHMAN C. J. This action was brought by the indorsee against the indorser of a promissory note. The defendant gave notice to the plaintiff, that he should call on him at the trial, to prove what consideration he had given for the note, and under what circumstances he came to the possession of it. On the trial, the defendant offered to prove, that the note had been put into circulation by the drawer, fraudulently and without his knowledge, and it was his intention after laying this foundation, to call on the plaintiff to shew how he came by it, and what he gave for it. The Court rejected the evidence, and a bill of exceptions was taken to their opinion. Honesty and good faith are the basis of the mercantile law. Those, therefore, who act with honesty and good faith, and those only, are worthy of protection. Negotiable paper stands in the place of specie; it is therefore of the utmost importance, that when such paper is fairly put into circulation, the *bona fide* holder should be involved in no difficulty, on account of secret transactions between the original parties. On this principle our act of assembly was made, which forbids defalcation, in case of paper of a certain description. But although the person who acquires paper, *in the usual course of business*, should receive all possible protection, yet there is no principle of justice or sound policy, which requires the same extension of favour to one who comes to the possession of it in an *unfair manner*, or *without* consideration. In the first instance it is presumed that every man acts fairly. It lies on the defendant, therefore, to shew some

(*a*) 2 *Johns.* 50.

**1813.**

HOLME
*v.*
KARSPER.

probable ground of suspicion, before the plaintiff is expected to do any thing more than produce the note on which he founds his action. But this being done, it is reasonable that the holder should be called on to rebut the suspicions. All that is asked of him, is to shew that he has acted fairly, and paid value. That these are the principles of the mercantile law, has been abundantly shewn by the cases cited by the plaintiff in error. Now to apply these principles to the case before us. The defendant offered to prove that the note indorsed by him, had been put in circulation by the drawer, by *fraud and falsehood.* If he had proved this, enough would have been done, to throw on the plaintiff the proof of the manner in which he came to the possession of the note, and what he paid for it. But from this evidence the defendant was precluded. He was not permitted to make out a case, which would have entitled him to a verdict, unless the plaintiff had come forward and cleared himself of suspicion. I am of opinion, that the District Court erred in rejecting the evidence, and therefore the judgment should be reversed, and a *venire facias de novo* awarded.

YEATES J. gave no opinion, not having been present at the argument.

BRACKENRIDGE J. concurred with the Chief Justice.

Judgment reversed.