## Beltzhoover *against* Blackstock.

Where the maker or indorser of a promissory note, which has been transferred by the original to a second holder, has a defence against the payment, a publication in the gazette will not affect the second holder with notice of the contents of the advertisement, or of the objections to the note, so as to place him in the situation of the original holder.

Where, in a suit by the second holder against the maker of a promissory note, the defendant gave notice to the plaintiff that no valuable consideration had passed from the original holder to the defendant, but did not notify the plaintiff that he would be called upon to show his title from the original holder, the plaintiff cannot be called upon at the trial to prove the consideration he gave for the note. And in such case, evidence of fraud or mistake, as between the original parties, would be nugatory and inadmissible.

An attorney, who knew professionally of the transfer of a promissory note, on which an action was afterwards brought, will not be admitted as a witness to prove the terms of the transfer.

To exclude the testimony of an attorney it is not necessary there should be a suit depending.

WRIT of error to the court of common pleas of *Alleghany* county.

This was an action brought by William Blackstock and George Blackstock, partners trading under the firm of William Blackstock & Co., against Jacob Beltzhoover, in which a verdict and judgment were rendered in favour of the plaintiffs below. The action was brought to recover the amount of two promissory notes, drawn on the 24th of November 1828, by Henry Holdship and Son, in

[Beltzhoover v. Blackstock.]

favour of and indorsed by Jacob Beltzhoover or order, and delivered by the makers to Thomas Hind; one for 1016 dollars payable in ninety days, and the other 1020 dollars and 33 cents payable in one hundred and twenty days. Hind transferred these notes to Blackstock & Co. before they became payable; and the payment of about 1100 dollars of the notes was resisted in this suit, on the ground that the notes exceeded, to that amount, the sum due to Hind by the makers. The remainder was admitted to be due, and is stated to have been since liquidated. To introduce evidence to this effect, the defendant offered to prove that Blackstock & Co. had notice, before they received the notes from Hind, that the defendant alleged a want of consideration as to the notes, and they therefore stood in the situation of Hind himself; and also that Hind was the real plaintiff in this suit, and the plaintiffs only agents or trustees for him. To establish this defence the defendant proved that the notes were lodged at the Branch Bank of the United States in Pittsburgh by Hind, for collection, on the 26th of November 1828, and were withdrawn by him on the 3d of February 1829; that it was not usual to withdraw notes from that bank and deposit them for collection in another; that Hind gave no reason for withdrawing them, and Blackstock & Co. never kept an account there. On the 5th of February 1829, the notes were placed for collection in the Bank of Pittsburgh, by Blackstock & Co., where they remained till they were protested at maturity. On the 3d of February 1829 a notice was published in the Pittsburgh Gazette, as follows:

" *Caution.*—The public are cautioned against taking by indorsement, or otherwise, two certain notes, drawn on the 24th day of November 1828 by H. Holdship and Son, one for 1016 dollars payable in ninety days, and one for 1020 dollars and 33 cents payable in one hundred and twenty days after date, to Jacob Beltzhoover or order, and given to Thomas Hind. The drawers have a legal and just defence against said notes, which they will insist on whenever attempt shall be made to enforce the payment thereof.

"Henry Holdship and Son."

William Blackstock at this time lived in Alleghany town, and was a subscriber to the Pittsburgh Gazette: his paper was regularly sent to the Alleghany Bridge, and no complaints were made of its not being received. Hind was told of the advertisement the day it appeared.

The defendant then proved the service of a notice on the plaintiffs previous to the trial, calling on them to produce the books of Thomas Hind, and various other documents; and also a notice to the plaintiffs, that the defendant intended to show on the trial that no valuable consideration was received for the notes in question, except as to the amount admitted in the affidavit of defence; and that the want of consideration would appear by reference to the accounts, copies of which they then furnished, and also by reference to Holdship's books, and the books of Thomas Hind.

The defendant then offered the following evidence :—that the notes in question call for the sum of about 1100 dollars more than was due to Thomas Hind at the time they were given : that as to this sum the defendant received no consideration.    The defendant proposed further to prove by circumstances, that as to the sum last mentioned, the notes include a debt of J. H. Lambdin to Thomas Hind, which the defendant never agreed to pay, and did not know to be included in the notes until shortly before this publication in the Gazette.    Among a great variety of facts tending to make out this defence are the following : that defendant is not a book-keeper himself, nor acquainted with the science and business of book-keeping ; that his books at the paper mill in Pittsburgh were kept by Thomas Hind himself, and his books at his store kept by other clerks ; that his business was very extensive and multifarious ; that he confided altogether in his clerks to keep and settle his books ; that at the instance of Hind, in the absence of the defendant Henry Holdship, and before the late partnership of Holdship and Son was commenced, defendant was charged in the books at the store as debtor to Hind with two notes ; that the defendant never gave such notes ; that they are not entered on his bill book ; that the notes were never seen by the defendant or his clerks at the book store.    Defendant will show by strong circumstantial evidence, that they were given by J. H. Lambdin for his own debt, and then charged to defendant, the said Lambdin being insolvent.    Defendant will show that the said Lambdin, at the time these notes were given by him, was a clerk in the employ of H. Holdship, and was guilty of many frauds against him ; that between him and Hind there was a very marked intimacy.    H. Holdship having lately associated his son, a young man, in his business, the new firm became responsible for the debts of H. Holdship.    The account of Thomas Hind was balanced by the clerk at the book store, and the notes signed by the son of H. Holdship and indorsed by defendant for accommodation, without any investigation or understanding of the account by Holdship or his son.

This evidence was rejected and a bill of exceptions sealed.

In the course of the trial the defendant called on John M'Donald, Esq. who, being sworn as a witness, stated that he was president of the Bank of Pittsburgh ; that he knew all about the assignment and transfer of these notes, but having been the attorney of the parties in interest and consulted by them, he knew it professionally.    The defendant then proposed to ask him, whether Hind was not the real plaintiff ; whether Blackstock & Co. were not stakeholders ; and who was his client in this suit.    These questions were objected to by plaintiff and overruled by the court, and exception taken.

The following errors were assigned.

1. The court erred : in overruling the questions proposed to the witness John M'Donald, Esq.

[Beltzhoover v. Blackstock.]

2. In rejecting the testimony offered as set forth at length in the bill of exceptions.

*Fetterman* and *Forward*, for the plaintiff in error.

We designed to show that Blackstock & Co. were not holders of these notes for a valuable consideration, and that the transfer to them was a mere sham. We showed that the notes were first deposited by Hind for collection in the Branch Bank of the United States; that on the 3d of February 1829 the caution was published in the Pittsburgh Gazette, and on that very day the notes were withdrawn by Hind from the branch bank, and in two days afterwards were deposited by Blackstock & Co. for collection in the Pittsburgh Bank. Then as to the *first* error assigned, we asked the witness, who was the attorney of Blackstock & Co., who his client was? We had a right to put this question, and to know from the witness who was the person for whose use suit was brought; and that the persons who were carrying on the suit were not the real plaintiffs. The court will order counsel to put on record the name of the *cestui que use.* Doran *v.* Holdship, 2 *Penns. Rep.* 1. The transfer of these notes was made in the witness's office before any suit was instituted. The rule of secrecy must not be extended too far. It is restricted to information which has been professionally communicated to the attorney. He can be made to give evidence of collateral facts that have come to his knowledge when not acting in his professional capacity; which was the case here. Heister, Assignee of Old *v.* Davis, 3 *Yeates* 4. Next as to the rejection of our offer to prove the facts set forth in the bill of exceptions. After giving to Blackstock & Co. the notice we did, it was competent for us to give evidence of those facts, as they went to show that Blackstock & Co. were mere trustees, and had notice of the transactions, and did not receive the notes in the usual course of negotiation. Harrisburg Bank *v.* Meyer, 6 *Serg. & Rawle* 537. As between Holdship and Son, and Hind, there was a failure of consideration for at least one half the amount of the notes. It was incumbent then on Blackstock & Co. to show a consideration between themselves and Hind. *Chitty on Bills* 400. As soon as Hind got these notes he put them into bank. He then had no idea of putting them into circulation. But as soon as the advertisement appeared, he took them out of bank and put them into circulation, in order to come under the provision contained in the eighth section of the act of the 21st of March 1814, "regulating banks," which takes away the right of set-off against negotiable paper. Gray *v.* Sutton, 8 *Serg. & Rawle* 481. An indorsee, before he can recover, must show a valuable consideration where there is suspicion cast upon the manner of procuring the note. 22 *Com. Law Rep.* 78, 301. No previous notice from the maker to the holder is necessary in order that the maker may be permitted to show an original want of consideration. And did not all the evidence offered in this case tend to show a want of consideration as

[Beltzhoover v. Blackstock.]

well as fraud? If notice to prove consideration be necessary to cast the burthen of proof upon the indorsee plaintiff, this case is brought within the rule. 4 *Taunt.* 114; *Roscoe on Bills* 123. It is hard to prove a negative, or to throw suspicion upon the transaction. But there is no hardship in requiring an indorsee to prove the consideration he gave. It is admitted that the law presumes a consideration to have passed from the holder. But here we gave the holder notice; and in such case, if the notes were obtained by fraud, or without consideration in the first instance, it devolves upon the present holder to prove that he gave value for them. The notice we gave was sufficient to put the plaintiffs on their guard. This is the object of notice. It is no matter about the mere form. We gave substantial notice; and are we then to be turned off on a mere subtlety? Suppose all the facts which we offered to show to be true; would they not constitute a good defence? Would there not have been proof of fraud sufficient to have thrown the plaintiffs upon proof of consideration? And yet the court below rejected the evidence on the ground that, if true, it would not have availed the defendant.

*Colwell,* for the defendants in error.

In 1822 the firm of Patterson and Lambdin, booksellers, failed, largely indebted to their hands, of whom Hind was one. Hind then went into the employment of Holdship. He was in good circumstances. Between himself and Holdship there were various transactions. Hind had money, and loaned some to Holdship. No settlement took place between them until 1828, when these notes were given for the balance. In that balance was included the sum of 400 or 500 dollars which Patterson and Lambdin owed Hind, and which Holdship had assumed to pay. Hind afterwards mentioned this, and spoke of it; and hence the notice which was published in the Pittsburgh Gazette. Then as to the rejection of Mr M'Donald's evidence, the rule is, that a counsel applied to for professional assistance, is precluded from giving evidence. Here the witness stated, not merely that he was present at the transfer of the notes, but that he knew it professionally. The record itself contains an answer to the question " Who is your client?" To exclude the testimony of an attorney, it is not necessary that there should be a suit depending. 2 *Stark. Ev.* 396, *note; Maugh. Att.* 368. With respect to the rejection of the other testimony, the principle is settled that in all cases where a note comes to a third person, it is necessary to prove some ground of suspicion that he did not obtain it fairly, and that no consideration had passed from the original holder, before the present holder can be called on for proof that he gave a valuable consideration. In this case there was no pretence of fraud or duresse in the procurement of the notes. The publication of notice would have been very prudent if the defendants had had a real defence. But the mere publication was no notice. They failed to prove that ever Blackstock & Co. saw or read the advertisement. Collins *v.* Mar-

tin, 1 *Bos. & Pul.* 651, was an action of *trover* for bills deposited with a banker, who was considered in the light of a factor. It was held that no evidence of a want of consideration, or other ground to impeach the apparent value received, was ever admitted between an acceptor or drawer, and the third person holding the bill for value. And the rule is so strict, that it will be presumed that he does hold for value, until the contrary appears. The *onus probandi* lies on the defendant. *He* must prove that there was fraud and an original want of consideration. The protection to the holder is his title. He is not bound to inquire into the consideration. In Lewis et al. *v.* Ruder, 9 *Serg. & Rawle* 193, the consideration entirely failed as between the maker and original holder. Evidence of such failure of consideration in a suit by a subsequent holder was rejected. It is first necessary for the defendant to prove that the note has been improperly obtained and put into circulation. Russel *v.* Cooke, 2 *Johns. Rep.* 50; Patterson *v.* Handy, 2 *Campb.* 596; 4 *Taunt.* 114; Dodd *v.* Edwards, 12 *Com. Law Rep.* 283; Dulany *v.* Hodgkin, 5 *Cranch* 333; Holme *v.* Karsper, 5 *Binn.* 469; *Chitty on Bills* 69; 2 *Stark. Ev.* 253; 1 *Saund. Pl. and Ev.* 354; 3 *Kent's Com.* 51.

The opinion of the Court was delivered by

SERGEANT, J.—The defence set up on the trial would be clearly admissible in a suit by Hind; but this being a suit of another holder, to whom Hind passed the notes, something more must be shown by the defendants before they can affect the plaintiffs by the want of consideration between the original parties: and the question is, whether sufficient was shown to justify the admission of the evidence offered.

The defendants have undertaken to place the plaintiffs in the situation of Hind, by proof of a knowledge on their part of the objections to these notes, and also of the circumstances casting a suspicion on the plaintiffs' title. And I concur in the position, that if an indorsee takes a note heedlessly, and under circumstances which ought to have excited the suspicions of a prudent and careful man, the maker or indorser may be let into his defence. Gill *v.* Cubitt, 3 *Barn. & Cress.* 466; 3 *Kent's Comm.* 53. Much more if there is ground to suspect a secret understanding that the indorsee should appear in the light of an innocent holder, whilst really acting as an agent or trustee for the original party. But what are the circumstances in evidence here, that lead to this conclusion? I perceive nothing in the contract of plaintiffs and Hind, in relation to the banks in which the notes were placed, or their removal from one and deposit in another, that is out of the usual course of business. Before a note is due, the holder may withdraw it from the bank in which he has deposited it for collection, and transfer it to a person who may deposit it in another bank, in which he transacts business, without inducing a suspicion of impropriety.

The publication in the gazette, with the evidence of one of the

III.—D

plaintiffs being a subscriber, that his paper was duly sent, and no complaint made of omission, is relied on as visiting the plaintiffs with notice of the defence which the defendants intended to make. But such a publication cannot be considered as affecting the plaintiffs with direct notice of the contents of the advertisement, nor even as a circumstance for the jury to infer it. It would be of dangerous consequence to hold an advertisement in the *gazette* to be such an actual notice as to visit a party with all the consequences of full and express notice. A general warning or notice in the gazette, not to trust a wife, is not a sufficient prohibition to excuse the husband from liability for necessaries, though an actual notice would be. 1 *Bac. Ab.* 488. Notice in the newspaper of dissolution of partnership, is not sufficient as to persons who had previously dealt with the firm. 4 *Bac. Ab.* 608. In the present instance the newspaper may not have been delivered to the party: if left at his abode, he may not have read it, or not till subsequently to the transaction it related to. It would be hard to subject a man to the consequences of *mala fides*, when perhaps he never had knowledge of the matter alleged. In the case of a common carrier, a notice limiting his responsibility was held not sufficiently given though constantly published in a weekly newspaper which the party had taken for three years. —— *v.* Horne, 3 *Bing.* 12, cited 3 *Kent's Comm.* 39. It would not be intended, say the court, that a party read all the contents of any newspaper he might choose to take. I therefore think the publication in the newspaper did not amount to notice to the plaintiffs of the objections to the notes, so as to place them in the situation of Hind and subject them to the equities he was liable to.

But it is contended that, independent of all proof on the subject, the defendants had a right to give evidence of mistake and fraud in the procurement of these notes by Hind, and that the plaintiffs were then bound to show the circumstances under which they got the notes, before they could be deemed *bona fide* holders for a valuable consideration, exempt from the defence set up. And the rule undoubtedly is, that when negotiable paper has been stolen or lost, or obtained by duresse, or procured or put in circulation by fraud, proof of these circumstances may be given against any plaintiff, and on such proof being given, it is incumbent on the plaintiff to show himself to be a holder *bona fide* and for a valuable consideration: otherwise he is considered as standing in no better situation than the former holder, in whose hands the instrument received the taint. This I take to be the rule as settled here and in England. In Holme *v.* Karsper, 5 *Binn.* 469, the suit was by the indorsee against the makers; and the late chief justice Tilghman says, " in the first instance it is presumed every man acts fairly. It lies on the defendant, therefore, to show some probable ground of suspicion, before the plaintiff is expected to do any thing more than produce the note on which he founds his action. The defendant offered to prove that the note indorsed by him had been put in circulation by the drawer by fraud

[Beltzhoover v. Blackstock.]

and falsehood. If he had proved this, enough would have been done to throw on the plaintiff the proof of the manner in which he came to the possession of the note, and what he paid for it." In Heath *v.* Sansom, 2 *Barnw. & Ald.* 291, 22 *Eng. Com. Law Rep.* 80, it is said that it may be laid down as a general rule, that if the note or acceptance were taken under such circumstances, the indorser himself could not recover : the indorsee must prove that he became so for a good consideration. This general rule appears not to be inconsistent with justice and sound policy. It is calculated to check secret transfers, by covin and collusion, to a *mala fide* holder, for the purpose of throwing on a party to a note or bill a responsibility which is unjust, and which, if the truth appeared, he could not be subjected to. Nor does it seem to impose any undue hardship on the plaintiff, to oblige him to show that consideration which is the foundation of the privilege he enjoys beyond the person from whom he derives title. (*a*)

Without meaning to lay down any general rule, it is sufficient to say, that to throw on the plaintiffs the necessity of showing the consideration they gave for the note, justice requires that express notice should be previously given that they would be called upon, at the trial, to do so, otherwise they may be taken by surprise, and inferences drawn against them from their inability to give proof which would have been in their power. if apprised beforehand. Being a negotiable instrument, the first presumption is, that the holder took it fairly and in the regular course of business : and when that presumption is to be overthrown, and he is to supply it by actual proof, he ought to have opportunity to prepare for doing so. On this point the practice of the English courts seems to differ : the common pleas holding notice indispensable ; the king's bench not requiring it. Mana *v.* Lent, 1 *Moody & Malk.* 240 ; 22 *Eng. Com. Law Rep.* 302 ; *Chit. Bills* 400. I know of no decision in our own courts; but I believe the practice has been to give notice. It was done in Holme *v.* Karsper, 5 *Binn.* 471, and it would seem right that the practice should be continued.

In the present case, the defendant gave a notice to the plaintiffs, that no valuable consideration passed from Hind to the maker as to a part of these notes, but did not notify them of his intention to call on them at the trial to show their title from Hind. The defendants, therefore, not having availed themselves of this ground by previous notice, it was too late to do it on the trial. The evidence of fraud or mistake, as between the original parties, was nugatory and inadmissible in this suit.

As to the other point, the refusal to compel Mr M'Donald to answer the questions proposed to him by the defendant, it seems that he possessed no knowledge on the subject except what he obtained from his professional intercourse with the parties. This it is the

(*a*) But, see Bassit *v.* Dodgin, 10 *Bing.* 40.

privilege of the client he should not be permitted to divulge. With-
out such a privilege the confidence between client and advocate, so
essential to the administration of justice, would be at an end. It is
not necessary there should be a cause depending in court; it is suffi-
cient if the witness were consulted professionally, and acted or ad-
vised as counsel. No knowledge appears to have been acquired by
him from being called as a witness to any *transaction,* or acting col-
laterally in a distinct concern; nor was he asked for information
derived *aliunde.* The facts alleged by the defendant ought therefore
to have been established by other testimony. There was no error
in overruling this evidence.

Judgment affirmed.