Sutlirr, C.J.
There is presented by the record in this •case but a single question for our consideration: upon which party was the burden of proof, under the issue made by the pleadings ?'
It is here to be observed that the pleadings in the case, the petition and answer, were filed previous to the amendment of April 8, 1857, and under the original provisions of section 84 of the code, which provided that “ the only pleadings ■allowed are the petition by the plaintiff; the answer or demurrer by the defendant; the demurrer or reply by the plaintiff ;” and of section 101, that “ there shall be no reply except upon the allegation of a counter-claim or setoff in the answer;” and of section 127, that “ every material allegation of the petition not controverted by the answer, and every material allegation of new matter in the answer constituting a counter-claim or setoff not controverted by the reply, shall for the purposes of the action be taken as true ; but the allegations of new matter in the answer, not relating to a counterclaim, or setoff, or of new matter in the reply, shall be deemed to be controverted by the adverse party, as upon a direct denial,” etc.
The allegations of the petition, that the defendants made and delivered their negotiable promissory note to Woolsey, and that Woolsey before it fell due, for a valuable consideration, indorsed and delivered it to the plaintiff, is not denied *538 in the answer. The plaintiff’s right to recover is, however,, sought to be barred by the allegation of neAV matter in the-answer, constituting a defense. But, as we have seen, by the provisions of the code then in force, this matter in bar, so set up in the answer, is to be regarded as traversed by the plaintiff. It Avas, therefore, incumbent upon the defendants to-prove the matter so pleaded in bar, in order to entitle them to the benefit of it. Thus far, it is apprehended, there can be no two opinions entertained by counsel of the respective parties.
But it is insisted by counsel of the defendants, that although it is true, that the burden of proof, under the pleadings, was upon the defendants, and that it was incumbent upon them to show the truth of the matter alleged and relied upon to bar the plaintiff’s right of action; yet, it is said, that the bill of exceptions shows that if the defendants made such proof as showed a defense against the note in the hands of Woolsey, that then the burden of proof Avas thereby shifted from the defendants upon the plaintiff. And the defendants rely upon both principle and authority to support this proposition.
. In the first place, then, how' stands the case upon principle? We have seen that the facts constituting the cause of action stated in the petition were not denied by the answer; but the defendants relied upon two substantive facts stated' in the answer as a defense : 1. That the note was without consideration in the hands of Woolsey, the payee: and, 2. That the plaintiff, at the time he purchased and received the note,, had notice of the fact; and both these facts, so alleged in the answer, are, in law, traversed by the plaintiff. It is admitted that when the case was thus set down for trial upon the single issue made by the denial of the truth of these averments set up in the answer as a bar, it was incumbent upon the defendants to prove the matter so alleged, in order to constitute a bar to the plaintiff’s right of action; and neither one of the facts constituting a defense, and both being denied, it was incumbent upon the defendants to prove-both facts so averred. It is also shown by the record, that under the charge of the court evidence was required to be- *539 given by the defendants to prove only one of the facts so averred in 'the answer, to-wit, the fact that the note in the hand of Woolsey was without consideration.
But it is said by the defendants that the proof of the failure of the consideration of the note while in the hands of Woolsey, the payee, raises a presumption of the knowledge of that fact on the part of the plaintiff. It is difficult to perceive how this presumption can be made to appear. It stands admitted on the record that the plaintiff purchased the note for a valuable consideration; and, as all men are presumed to know the law, the plaintiff must be presumed to know, that if the note, in the hands of Woolsey was without consideration, it was not collectible, but worthless. How, then, when the admission is, that the plaintiff bought and paid for the note, can it be said, in the absence of any proof, and contrary to his denial, that the plaintiff so buying and paying for the note, knew it to be worthless ? Such a conclusion is by no means inferable from those facts. Nor is it possible to gain such a deduction, as the presumption of knowledge by the plaintiff, from the fact of the existence of the want of consideration for the note. It is not pretended that the evidence at all connects the plaintiff with the transactions between Woolsey and the defendants, in relation to which the note was executed to Woolsey. The answer only avers that the plaintiff purchased the note with knowledge of its want of consideration; and there is shown by the record no avenue of such knowledge to the plaintiff from which it can be presumed. On 'the contrary, even if it be conceded that the proof clearly showed the fact of want of consideration for the note, while so held by Woolsey, the record shows the cause of action to have been a promissory note, indorsed to the plaintiff, which of itself implies a consideration; and that the same was a negotiable note, which not only imports value,’ but a willingness on the part of the maker, that any third person may purchase it, and a promise to pay to such third person. There is nothing, therefore, in the record to show any circumstances cautioning the plaintiff against making a purchase of the note, cr intimating to him any defect, or de *540 fense which the makers could avail themselves of. It is not such a case as that of an erased, interlined, or altered instrument, of which defect the purchaser may he presumed to have had notice, by actual view.
I am, therefore, unable to perceive that upon principle it can possible be claimed that the denial of knowledge on the part of the plaintiff is overcome — not by proving his knowledge, but by proving the existence of the fact of failure of consideration, which he so denied knowing, at the time of his buying and paying for the note. By no logical reasoning upon the facts presented by the record, can such presumption of knowledge on the part of the plaintiff arise. The conclusion is certainly illogical. The burden of proof, would then, upon principle, appear to remain upon the defendants as to this, as well as the other fact, which together constitute the defense set up in the answer.
Let us now recur to the authorities relied upon to show that the burden of proving that the transfer of the note by the payee (if fraudulent in his hands) to the plaintiff was in good faith, and, for a valuable consideration and without any knowledge of fraud or want of consideration, was on the plaintiff.
The case of McKesson v. Stanberry, 3 Ohio St. Rep. 156, is doubtless the case most relied upon by the defendants. The facts in that case, as found in the verdict, were that the note on which suit was brought by the second indorsee was negotiable, and received by him from the first indorsee after due, but without notice of the want of consideration, and for a valuable consideration; but that there was no evidence that the first indorsee received the note from the payee before due, or that he gave a valuable consideration therefor; but that the consideration for the note, as between the defendant, the maker and the payee, had utterly failed, and that the payee had agreed to surrender the note to the maker. It thus appeared that the plaintiff, the second indorsee, had taken the paper dishonored, over due, and he could only avoid the defense whiclr'the defendant, the maker of the note, had, as against the payee, by deriving title from the payee, by the first *541 indorsee, before due, without notice and for valuable consideration. The record showed that the plaintiff had proved such title on the part of the first indorsee, and this court very properly held that the judgment should be in favor of the defendant. The judgment in that case was, therefore, unquestionably correct. The judge in pronouncing the opinion of the court, says : “Whatever the rule may be in a case where no fraud is shown to have been perpetrated by the original holder, in transferring the note in a case like this, where it is shown that the transaction on the part of the original holder was a positive fraud, we think it lies on the party claiming under such transaction, to show that he acted honsetly without a knowledge of the fraud.” And the judge refers to the case of Monroe v. Cooper, 5 Pick. 412, as particularly in point to sustain this view. If to show that he purchased the negotiable paper, in the usual course of trade, before due, and for a valuable consideration, in such a case, be understood by the judge a fair prima facie showing that he acted honestly and without a knowledge of the fraud, the correctness of the remark must be admitted; but if the remark is to be understood as meaning more, it must be regarded, I think, at variance both with authority and correct reasoning.
The case of Monroe v. Cooper, 5 Pick. 412, is also relied upon by the defendants in this case as an authority. That was an action by the indorsee upon a negotiable note against the members of a partnership company, by whom the note purpoi’ted to be made. Two of the three partners appeared and pleaded the general issue, and, on the trial, offered to prove that the note was made by the other partner, w'ho had made default in the case, for his own benefit, and not for the benefit or on account of the company, or with the knowledge of the other partners; but as the defendants did not offer to prove, also, that the note was due when indorsed to the plaintiff, or that he had knowledge of the facts, the judge on the trial of the case, was of the opinion that the facts so proposed to be proved did not amount to a defense, and excluded the proof. The supreme court, in revising this opinion, by Wilde, J., held that the defendants had the right to prove, if they *542 could, that fraud was practiced in the inception of the note,, or that it was fraudulently put in circulation. And the judge adds: “ This fact being established, will throw upon the plaintiff the burden of proof, to show that he ca,me by the possession of the note fairly and without any knowledge of the fraud.” There can be no dou'ff that the judgment of the supreme court, in this case also, was strictly correct; and if by burden of proof to show possession of the note fairly and without knowledge of the fraud, be only meant that upon defendants proving the note to have been fraudulently executed- and put in circulation, that it was incumbent upon the plaintiff to prove that he received the negotiable paper before due in the usual course of trade, upon a valuable consideration, the remark of Judge Wilde is strictly correct, and consonant with the authorities to which he refers; but if his remark is to be understood as intimating that the rule in such a case imposes any further burden upon the plaintiff than to prove he purchased and received the transfer of the negotiable paper-before due, in the usual course of trade, bona fide, and upon a valuable consideration, it is not only not sustained by, but is opposed to, the authorities to which he refers.
In the case of Vallette v. Parker, 6 Wend. 615, the facts were quite similar to those in the case of Monroe v. Cooper, 5 Pick. In pronouncing the opinion of the court in the case, Savage, C.J., says : “Whatever doubts may have heretofore existed, I take it to be well settled that as between the original parties to a promissory note, the defendant may show either the want of consideration, or the illegality of it. Rut when a negotiable instrument has passed in the ordinary course of business into the hands of a bona fide holder for valuable consideration, and without notice of the consideration, the general rule is that the defendant can not avail himself of any such defense.”
In the case of Thomas v. Newton, 2 Carr. & Payne, 605, an action by the indorsee against the acceptor of a bill of exchange; defense, that the bill was accepted for stock-jobbing differences, and no consideration for the bill. Lord Tenterdon, C.J., said: “If the defendant shows that there *543 Was originally no consideration for the bill, that throws it on the plaintiff to show that he gave value for it, or that value was given for it by Dandridge, the.prior indorsee.”
Another case to which we áre referred by the defendants in support of their position, that it was incumbent upon the plaintiff as indorsee to prove, not only that he had paid value for the note and received it before due, in the ordinary course of business, but also that he, in fact, had no notice of the want of consideration, is the case of Heath v. Sansom & Evans, 2 Barn. & Adol. 291, 22 Com. Law. Rep. 78. Assumpsit by plaintiff as indorsee against defendants, as makers of a negotiable promissory note ; defense, that the note had been given by one of the members of the firm, in the name of the firm, for his own private debt to the payee, without the consent or knowledge of the other members of the firm, and received by the payee in fraud of the right of the defendants, the other members of the firm. Lord Tenterden, C.J., in pronouncing the opinion, after saying the court was satisfied of the goodness of the defense as against the payee, adds — “ And this is a stronger case than the ordinary one, in w.hich indorsees have been put to prove value given by reason of the circumstances under which an acceptance or note was obtained, because here the indorsee chooses to bring his action against the makers who are unknown to him, rather than sue the indorser (the payee) whom he knows, and from whom he took the note.” Littledale, J., in his opinion, said: “ It has been frequently held that when a note or acceptance of a bill has been obtained by fraud, loss out of the owner’s hands, or duress, the indorsee is' bound to show that he gave value, and in some instances even that he became holder bona fide, and not under circumstances of suspicion. It may be laid down, as a general rule, that if the note or acceptance were taken under such circumstances that the indorser himself could not recover, the indorsee must prove that he became so, for a good consideration, though no notice be given him to produce such evidence.” Parke, J., in his opinion, remarked as follows: “ I have always understood that an indorsement must be taken prima facie to have been given- *544 ■for value, and that the proof, at least, of circumstances tending to throw suspicion on such indorsement, lies on the party disputing its validity, before the indorsee can be called upon to prove that he gave value for the bill. * * * * When the note or acceptance has been obtained by felony, by fraud, or by duress, it has been usual to require proof of valuable consideration on the part of the indorsee; and I do not dispute the propriety of that usage, as any one of those facts raises some suspicion of the title of the holder. But I am by ■•no means satisfied that the same rule can be applied to all cases where an acceptance or note has been given without consideration. * * * * The simple fact of want of consideration between the acceptor and drawer, or maker and payee, affords no inference that the holder received the bill or note mala fide, or without consideration.” Patterson, J., “ As at present advised, I think the general rule of practice on this subject has been correctly stated; and that where a note or acceptance has been given under such circumstances that the original payee could not recover on it, the indorsee •may fairly be called upon to show how it, came to his hands, and is not entitled to a previous notice.”
The case of Ball v. Allen, 15 Mass. Rep. 433, was an action by the holder of an order payable to bearer against the drawer, in which it was held that inasmuch as the writing did not purport to be for value, and no particular person was named as drawee, no action thereon could be maintained against the person subscribing it, without showing that he came fairly by it for a valuable consideration.
The case of Holme v. Karsper, 5 Binn. 469, was an action by the indorsee of a negotiable note, obtained by the plaintiff before it fell due against the payee, as indorser; defense, that the note was never,' in fact, put in circulation by the payee; that the note was taken out of bank by the payee, his name having been written on it for the purpose of collection in bank, where deposited, and by arrangement with the maker, sent to him to be canceled, without having first erased his indorsement on the note. Tilghman, C.J., in delivering the opinion of the court, says: “ In the first instance it is pre *545 Burned that every man acts fairly. It lies on the defendant, therefore, to show some probable ground of suspicion, before the plaintiff is expected to do anything more than produce the note on which he founds his action. But this being done, it is reasonable that the holder should be called on to rebut the suspicions. All that is asked of him is to show that he acted fairly, and paid value.”
The foregoing are the principal authorities referred to by counsel of defendants to sustain the rule expressed in the charge of the court.
It will be difficult, I apprehend, to perceive any apparent conflict in the authorities referred to by the plaintiff,’ taken together, and those cited by the defendants’ counsel, with the single exceptions of the cases in 3 Ohio St. Rep., and 5 Pick. The case of Smith v. Martin, 2 Mees. & Welsh. 304, cited by plaintiff’s counsel, is hardly a stronger case in favor of plaintiff than the English cases already referred to, cited by counsel of defendants. It was an action by an indorsee against the maker of a promissory note, indorsed and delivered by the defendant to E. & Co., who indorsed it to G. V. & Co., who indorsed it to plaintiff. Plea, that the said several, indorsements were in blank, and that after the indorsement of the note by defendant to E. & Co., and before, the delivery thereof to the defendant, the note was in the hands of Gr. Y., who was the owner, and while the note was so in his hands as owner, it was by consent of G. Y., by an order of nisi prim, ordered that the note and the claim of G. Y. therein should be referred to arbitration; and that the note was delivered by said G. Y. to the plaintiff after the making of said order and before any award was made in the premises,, and in violation of good faith, and in fraud and contempt of said order; and that the plaintiff took the said note with full knowledge of the premises. Replication that the plaintiff had not, at the time when he so took the said note, any knowledge of the premises in the plea mentioned. At the Middlesex sittings, after Michaelmas term, it was contended on the part of the defendant, on the authority of Bingham v. Stanley, 1 Gale & Davison, 237, that inasmuch as the replication admitted a- *546 fraudulent delivery of the note to the plaintiff by G. V., the plaintiff was bound to begin, and in the first instance to prove consideration. The lord chief baron, however, was of the opinion that even though the fraud of G. Y. was admitted by the replication, still, as the note was not therefore absolutely void as against the plaintiff, but only capable of being made so by proof of his knowledge of the fraud, that fact was to be proved affirmatively by the defendant. The defendant failing to prove knowledge on the part of the plaintiff, the verdict and judgment were for the plaintiff.
At the Biliary term, in the court of exchequer chamber, counsel of defendant moved for a new trial, on the ground of misdirection of the judge in not having called upon the plaintiff to prove consideration for the note. But after full argument, the court refused the rule. Lord Abinger, O.B.., Alder-son, B. and Gurney, B., each expressed an opinion against allowing the rule. The reasons governing two of the judges, however, would seem to be an unwillingness to regard the replication as admitting the fraudulent transfer of the note by G. Y. And their holding- in refusing the rule was admitted by them to be opposed to the holding, of the queen’s bench in the case of Bingham, v. Stanley, 1 Gale & Davison, 237. But both cases seem to have turned rather upon the question of pleading, whether the replication was an admission by plaintiff, equivalent to proof on the part of defendant of a fraudulent transfer of the note.
But it is unnecessary to consider the authorities more at length in detail. The almost uniform holding of the courts to be deduced from the general current of decisions, English, and American, is, that the indorsee of mercantile paper is presumed to be the bona fide holder, and entitled to the payment thereof. And this presumption entitles such holder to a recovery in an action brought upon the paper unless there be alleged, and admitted, or proved on the part of the defendant, some fact or facts overcoming such presumption in favor of the right of the plaintiff to recover judgment thereon. Thus, if in the face of such presumption in favor of the plaintiff’s right to recover as tlie-bona fide holder of the paper, the *547 defendant avers that the bill of exchange upon which suit is so brought by the indorsee was fraudulently diverted from the purpose for which drawn, by the plaintiff’s indorser, with full knowledge on the part of the plaintiff at the time of receiving said paper, the defendant states facts sufficient to overcome the presumption in favor of the plaintiff’s right to recover, and to constitute a good defense, when admitted by the plaintiff or proven by the defendant. But if not admitted by the plaintiff, the bare averment of the facts by the defendant can not at ail affect the plaintiff’s presumptive right of recovery, until established by proof; or at least so far established by proof as to show a good defense to the paper previous.to its transfer to the plaintiff. The weight of authority is to the effect, that when the defendant has proved the paper to have been fraudulently diverted, or fraudulently put in ■circulation, the plaintiff must then take up the case and prove the transfer to have been made to himself before due for a valid consideration. Many of the cases seem to favor the idea that it is also incumbent upon the plaintiff to prove that he obtained the paper in the usual course of business or trade, in order to restore the presumption of his right to recover. But it is unnecessary to here determine how the weight of authority stands upon this point. But when we recur to the general current of the cases, we find the presumption in favor of the plaintiff’s right to recover; and the necessity of the fact of plaintiff’s knowledge oij the fraudulent diversion, or matter of defense, as well as of its existence, to constitute a perfect plea in bar, to be .generally recognized. The bona fide of the plaintiff’s right of recovery upon the paper is, therefore, the question in issue between the parties. If the plaintiff had notice, either by the paper being overdue, or put into his hands without consideration, or in any other way notified of the defendant’s right to refuse payment, he can not be regarded a bona fide holder of the paper acquired under such notice. There may be cases, therefore, where the buying the paper and paying value for it, may be attended with such circumstances, as might not, without the additional proof of the purchase being in the ordinary course of busi *548 ness, be sufficient to restore the presumption in favor of plaintiff’s right to recover upon the paper.
But it is certain that it can .not be maintained, either upon authority of the cases, English or American, that* from the fact of the defendants proving a fraudulent diversion or transfer of the paper, it then becomes incumbent upon the plaintiff to prove, not only payment of value, and a purchase in the usual course of trade, but also his own ignorance of the fraudulent diversion or transfer. This would be to require the plaintiff, after having traversed both the averment of fraud, and knowledge constituting the defendant’s plea in bar, in the absence of any proof on the part of the defendant of its truth, after denying it upon the record, to disprove it also. The proposition is evidently unsustained by authority, and opposed to the general rules of pleading. And-we have already seen that it can not be sustained upon principle and reason.
We think the district court erred in holding that it was incumbent upon the plaintiff to prove, not only that he purchased the note before due and in the usual course of trade, and for a valuable consideration, but that he made the purchase without knowledge of the fraud of the payee. The proof of want of knowledge was not incumbent upon the plaintiff. The judgment of the district court must be reversed and the cause remanded to that court.
Judgment accordingly.
Beck, Gholson, Brinkerhoef and Scott, J J., concurred.