## Kuhns *versus* The Gettysburg National Bank.

1. On proof of the loss or larceny of negotiable paper, the holder must affirmatively show that he took it in the usual course of business for value.

2. If one obtains a bill from a finder, or a thief, or one who has fraudulently acquired it and obtains the money, he is liable to the real owner for the money, unless he took it for value in the usual course of business.

3. The fact that the holder is a banker doing a very large business, does not change the rule.

May 4th 1871. Before Thompson, C. J., Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Adams county*: No. 60, to May Term 1861.

On the 6th of November 1867, John Kuhns brought this action, which was debt, against The Gettysburg National Bank.

The claim of the plaintiff was for the amount of the hereaftermentioned draft, received by the defendants, but belonging to him. The draft, with its endorsements, is as follows:—

"No. 1852.          Washington, D. C., Dec. 4, 1865.
     Assistant Treasurer of the U. S., New York:

Pay to Cashier of Gettysburg National Bank, or order, Four
     Hundred Ninety-nine & 95-100 Dollars.

$499.95       (Paid Jan. 4, 1866).          J. A. Lawler,
                                   Paymaster U. S. A."

Endorsements:

" Pay B. B. Comegys, Esq., Cash., or order.
                                   T. D. Carson, Cash.
Pay Merchants' National Bank, New York, or order.
                                   B. B. Comegys, Cash.
     J. D. Vermilye, Cash."

The case was before tried and the judgment reversed: 12 P. F. Smith 88.

The plaintiff testified that he was entitled to $500 bounty, and signed a paper directing the paymaster-general to transmit the amount to the Gettysburg National Bank. The paper was as follows:—

"Gettysburg, Pa., Sept. 18th 1865.
Paymaster-General U. S. A.

Is hereby authorized to transfer to the Gettysburg National Bank, Gettysburg, Pa., the amount of local bounty due us, retained by Lieut. Wm. F. Arnold, U. S. disbursing officer at Harrisburg, Pa., which money has not been paid to us, but has been forwarded to the Department at Washington, D. C.

                                   David Hartzell,
                                   John Kuhns."

[Kuhns *v.* Gettysburg National Bank.]

He had never received the money from the bank nor any one else. His captain, T. C. Norris, gave him the paper to sign, after he signed it he gave it to Norris: he never gave Norris authority to draw the money.

Captain Norris testified that he did not receive Kuhns's order on the paymaster-general nor did he receive his money; he had no knowledge of its having been received by anybody.

Major Lawler, the United States paymaster, testified that he had paid plaintiff's bounty by a check on the assistant United States treasurer at New York; he gave the date, number, payee, and amount of the check, corresponding with the check as given above.

Plaintiff proved that the check was on file, in the assistant treasurer's office, the copy in.evidence being taken from it.

Hartzell testified that he had received his money from the defendant after having been notified by Captain Norris to come and get it.

The evidence was that the bank had collected the draft from the assistant treasurer of the United States, and that demand had been duly made by the plaintiff for the money and that he had been told there was no money in the bank belonging to him.

The court (Fisher, P. J.) charged: "This case has been tried before. This court then charged the jury, 'If the bank had the check in question sent or presented to them, and was credited with it by the party to whom endorsed, it was their duty to inquire into the ownership; and if they paid it to the holder, if he was not the legal owner of the money, it was a mis-payment and cannot be set up as a defence in this suit.' Upon that charge the jury found a verdict for the plaintiff. The case was afterwards removed to the Supreme Court. The view taken by this court was held to be erroneous, and the judgment was reversed and the case sent back to be again heard upon the principles laid down by the Supreme Court. * * * From this opinion it will appear that 'it was incumbent on the plaintiff to show that the money was received by the bank to his own use, and this he failed to do by merely proving the check or draft, and the receipt of the amount of it by the bank.' By this decision we are bound, and we therefore instruct you that the evidence given on the present trial does not prove that the money was received by the bank to the plaintiff's use, and therefore your verdict must be for the defendant."

The court then directed the prothonotary to take a verdict for the defendant. The jury hesitating to respond to these instructions, the court then said to them:—

"This court is a subordinate court to that of the Supreme Court, and whether they agree with our view of the law or not, it is our duty to instruct you as they direct, and we cheerfully do so. In like manner the jury are bound to obey the instructions

[Kuhns v. Gettysburg National Bank.]

of this court, whether they accord with the views of the jury or not, or whether the verdict that we direct you to render is in accordance with your views of justice or not. In the present case, if the jury find otherwise than they are directed by this court, we will set aside their verdict before the ink with which it is recorded becomes dry."

The verdict was for the defendant.

The plaintiff took out a writ of error, and assigned the charge of the court for error.

*R. G. McCreary*, for plaintiff in error.—Under the facts the defendant should have been required to explain its possession of the draft, and in the absence of other testimony they were chargeable with the money as received for the plaintiff's use: Bank *v.* Kuhns, 12 P. F. Smith 88; Patton *v.* Ash, 7 S. & R. 125; Greatorex *v.* Gerrish, 4 Esp. 9; Flemming's Ex'rs. *v.* McClain, 1 Harris 177. It is not necessary to prove notice before or at the time of payment: Calland *v.* Loyd, 6 M. & W. 26; Mason *v.* Waite, 17 Mass. 563; Hall *v.* Marston, Id. 579; Eagle Bank *v.* Smith, 5 Conn. 71; Dickson *v.* Cunningham, Mart. & Yerg. 221; Chitty on Cont. 606. It was a question for the jury: Gill *v.* Cubitt, 3 B. & C. 466; Egan *v.* Threlfal, 5 D. & R. 326; Snow *v.* Peacock, 3 Bing. 406; Strange *v.* Wigney, 6 Id. 677; Easley *v.* Crockford, 10 Id. 243.

*D. Wills*, for defendant in error.—Where one of two innocent persons must suffer he shall suffer who by his own acts occasioned the confidence and the loss: Story's Eq., § 387; Chitty on Bills, § 60; Byles on Bills 332; Garrard *v.* Haddan, 17 P. F. Smith 82; Lawson *v.* Weston, 4 Esp. 56; Miller *v.* Race, 1 Burrow 452; Byles on Bills 126, 298, note c; Phelan *v.* Moss, 17 P. F. Smith 59.

The opinion of the court was delivered, May 15th 1871, by

SHARSWOOD, J.—When this case was here before on a former writ of error (12 P. F. Smith 88), as it appeared upon the evidence, it was an attempt to make the bank liable upon the mere fact that it was the holder and had received the amount of a draft drawn by the order and for account of the plaintiff in favor of the bank. It was clearly shown by authority that such an action could not be sustained; that the presumption was that the draft was taken either in payment of a debt or that cash was given for it at the time it was received. The presumption resting on the usual course of transactions of this nature was in favor of the defendants, and *stabit presumptio donec probetur in contrarium.* There was no fact or circumstance which threw any suspicion on the transaction—that the money or value for it had not been paid.

[Kuhns *v.* Gettysburg National Bank.]

But the evidence on the second trial was entirely different. Captain Norris, to whom Colonel Lawler testified that he had sent the draft by mail, although examined as a witness on the former trial, was not asked whether he had ever received it. At all events it did not so appear upon the record. But as we have it now, he testified that he had never received it. From his evidence and that of Colonel Lawler, the jury might well infer, especially in connection with the testimony of the plaintiff himself, that it had been lost or stolen from the mail or post-office. This fact, if believed by the jury, shifted the *onus*, and made it incumbent on the bank to prove value and bona fides. It may be difficult to do so, and so it may be in the case of any holder suing the drawer or maker of negotiable paper. Yet nothing is better settled than that upon proof of the loss or larceny of negotiable paper the holder must affirmatively show that he took it in the usual course of business for value. This draft is in all respects the same as if it had been drawn by Kuhns himself on the assistant treasurer of the United States in favor of the Gettysburg National Bank. Suppose then it had been dishonored, and suit had been instituted by the bank against the drawer. Surely upon proof by the defendant that the draft had been lost, stolen or obtained from him fraudulently, the *onus* would have been thrown upon the bank to have given some evidence of value. It is hardly necessary to refer to the long list of cases in this court which establish this rule: Holme *v.* Karsper, 5 Binn. 469; Beltzhoover *v.* Blackstock, 3 Watts 26; Knight *v.* Pugh, 4 W. & S. 448; Brown *v.* Street, 6 Id. 221; Albrecht *v.* Strimpler, 7 Barr 476. Many others might be cited. If a party receives a bill from a finder or a thief, or one who has fraudulently acquired it, and obtains the money on it, he is liable to an action for money had and received to the use of the real owner, unless he can show that he took it for value in the usual course of business. The fact that the holder is a banker doing a very large business, and therefore that it is difficult for him to show the facts of this particular transaction among a great multitude of others, cannot change the rule of law, which is a salutary one. No point was made in the court below that it was necessary to show that notice had been given to the defendants before the trial that they would be called on to prove the consideration they had given for the draft. We must assume that such notice had been given. It is not necessary to decide whether the rule as to notice applies. As this case goes back for another trial, it will be prudent for the plaintiff to give such notice, so as to obviate all question.

Judgment reversed, and *venire facias de novo* awarded.